UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ADVANCED MARKETING SERVICES, INC.,<br>a Delaware corporation, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 06-11480-CSS<br><br>Jointly Administered<br><br>Adv. Pro. No. 07-50004-CSS |
| SIMON & SCHUSTER, INC., a New York corporation,<br><br>Plaintiff,<br><br>- against -<br><br>ADVANCED MARKETING SERVICES, INC., a<br>Delaware corporation,<br><br>Defendant. | Related Adv. Dkt. Nos. 23 and 24 |

## MOTION FOR LEAVE TO APPEAL

Simon & Schuster, Inc. ("S&S"), a creditor and supplier of goods to defendant

Advanced Marketing Services, Inc. ("AMS"), respectfully submits this motion (the "Motion")

for leave to appeal, pursuant to 28 U.S.C. §§ 158(a) and Bankruptcy Rules 8001, 8002 and 8003

from this Court's Order dated and entered on the docket on January 22, 2007 (Adv. Dkt. No. 24)

(the "Order"). The interlocutory Order denied the *Emergency Application of Simon & Schuster,*

*Inc. For Temporary Restraining Order Pursuant to Bankruptcy Rule 7065* (the "TRO

Application"), which sought a temporary restraining order ("TRO"), among other things,

directing AMS to stop selling goods subject to S&S' demand for reclamation of such goods.[1]

---

[1] A copy of the Order is attached hereto as Exhibit A.

## I.
## INTRODUCTION

1.      Leave to appeal should be granted because (a) the Order raises controlling questions of law, (b) there is a substantial grounds for difference of opinion about those questions of law, and (c) an immediate appeal from the Order is necessary to materially advance the ultimate determination of this adversary proceeding and the resolution of all reclamation claims in these chapter 11 cases. An appeal is further justified because the Court's Opinion (Adv. Dkt. No. 23) (the "Opinion), which constitutes findings of fact and conclusions of law in support of the Order, suggests that this Court has already concluded that all reclamation claims in these chapter 11 cases have been rendered valueless by the existence of the pre- and post-petition liens on that inventory.[2] Only an immediate appeal of the Order will enable S&S to prevent AMS from liquidating the goods subject to S&S' reclamation demand. If this Motion is not granted, S&S' statutory right to reclaim its specific goods will be eliminated forever and the ultimate resolution of millions of dollars of reclamation claims in these cases will be delayed by the inevitable need for appellate review of these issues after final judgment is entered.

## II.
## JURISDICTION AND VENUE

2.      This adversary proceeding arises out of and is related to the above-captioned chapter 11 cases pending before this Court. Therefore, this Court has jurisdiction pursuant to 28 U.S.C. §§ 157, 158(d)(2) and 1334. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and venue is proper in this Court pursuant to 28 U.S.C. §1409(a).

---

[2] A copy of the Opinion is attached hereto as Exhibit B.

544861 1

3.     Plaintiff is entitled to the relief requested by the Application pursuant to 28 U.S.C. §§ 158(a) and Rules 8001, 8002 and 8003 of the Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules").

## III.
## STATEMENT OF FACTS

4.     S&S is a global leader in the field of general interest publishing that provides a range of quality books and multimedia products across a wide variety of genres and formats. AMS is a wholesaler and distributor of books and other media.

5.     Within 45 days immediately before December 29, 2006 (the "Petition Date"), AMS received books and related goods (the "Goods") valued at $6,014,311.94. As of the Petition Date, S&S had (and continues to have) an unpaid pre-petition claim against AMS in the amount of approximately $26 million. On the Petition Date, S&S sent AMS a written Demand for Reclamation of Goods (the "Reclamation Demand") demanding the immediate return of the Goods to S&S.

6.     On January 5, 2007, S&S commenced this adversary proceeding by filing a *Complaint for Reclamation of Goods Pursuant to 11 U.S.C. § 546(c) and Related Relief* (Adv. Dkt. No. 1) (the "Complaint"), which sought a judgment of this Court (a) allowing the S&S to reclaim the Goods pursuant to section 546(c) of the Bankruptcy Code; (b) allowing and compelling immediate payment to S&S of an administrative claim for the value of the Distributed Goods (as defined in the Complaint) pursuant to section 503(b)(1) of the Bankruptcy Code; (c) allowing and compelling immediate payment to S&S of an administrative claim for the amount of the Goods received by Defendant within the 20 days preceding the Petition Date, pursuant to section 503(b)(9) of the Bankruptcy Code to the extent not reclaimed by S&S; and (d) compelling AMS to provide S&S with a comprehensive written accounting of the status and

3

disposition of all of the Goods. *See* Complaint, p.5.

7.     On January 11, 2007, S&S filed the TRO Application directing AMS to (i) immediately stop selling any goods sold by S&S to AMS and received by AMS within the 45 days immediately preceding the commencement of these cases until the Court can consider S&S' Complaint seeking reclamation of the Goods; (ii) segregate the Goods that remain in AMS' possession from its other inventory; (iii) provide an accounting of the disposition of the Goods; and (iv) provide S&S with access to inspect the Goods that remain in AMS' possession.

8.     On January 22, 2007, the Court entered the Opinion and the Order denying the TRO Application on the grounds S&S had not shown that (a) it would be irreparably harmed absent the TRO, (b) it had any likelihood of succeeding on the merits because the Lenders' pre- and post-petition liens are superior to S&S' reclamation claim, and (c) the balance of the equities tipped in favor of granting the TRO.[3]

9.     On January 24, 2007, the Court entered an *Order Establishing Procedures for Reconciliation of Reclamation Claims Pursuant to Section 105(a) and 546(c) of the Bankruptcy Code* (Chap. 11 Dkt. No. 248) (the "Reclamation Procedures Order"). Under the Reclamation Procedures Order, AMS is required to file a "Reclamation Claims Report" within 75 days following the entry of the Reclamation Procedures Order. The Reclamation Claims Report must state, among other things, how AMS intends to treat each of the reclamation claims filed in these chapter 11 cases. When the Reclamation Claims Report is filed in approximately two months, it is virtually certain to indicate that S&S' reclamation claim (and all other reclamation claims) will receive nothing more than general unsecured treatment given AMS' position that the Lenders' pre- and post-petition liens on inventory have rendered reclamation

4

claims valueless. The Opinion, especially the discussion concerning S&S's ability to succeed on

the merits, all but predetermines that outcome.

## IV.
## STATEMENT OF ISSUES ON APPEAL

- Did the Bankruptcy Court err in concluding that amended 11 U.S.C. § 546(c), which added the words "subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof," means that the existence of an unpaid balance on the pre-petition secured indebtedness, and the interim approval of the transfer of the pre-petition liens to secure the post-petition borrowings, rendered valueless all reclamation claims rather than concluding that reclamation claimants retain an interest in the Goods or the proceeds thereof as of the date of the Reclamation Demand that is junior to the Lenders' interest in the Goods?

- Did the Bankruptcy Court err in concluding that S&S' interest as a holder of a right of reclamation under 11 U.S.C. § 546(c) (as amended) is insufficient to require the Lenders to marshal collateral?

- If the Bankruptcy Court was correct on the issue of marshalling, did the Bankruptcy Court err in concluding that there mere existence of the Lenders' liens was sufficient to defeat S&S' reclamation rights, thereby allowing AMS to continue using the goods, or must the Lender affirmatively exercise its lien rights and foreclose on the goods in order to defeat S&S right of reclamation under 11 U.S.C. § 546(c)?

- Did the Bankruptcy Court err in concluding that S&S would not be irreparably harmed by (a) losing its statutory right to specific performance in the form of the physical reclamation of the Goods because S&S could be provided monetary damages, and (b) incurring additional expenses for obtaining replacement goods to sell to other distributors who are working to satisfy the demands of AMS' customers?

- Did the Bankruptcy Court err in concluding that the balance of equities is neutral where, on the one hand, S&S' statutory right to specific performance will be eliminated absent the TRO, and, on the other hand, AMS will continue to hold the Goods for future sale until their disposition can be resolved.

---

[3] As noted in the Opinion, the Court held that the public interest requirement did not apply to this dispute.

## V.
## ARGUMENT

### A.    Leave to Appeal

10.    S&S seeks leave from this Court to appeal the Order. An appeal from an interlocutory judgment, order, or decree of the bankruptcy court is commenced by filing a notice of appeal and a motion for leave to appeal pursuant to Bankruptcy Rule 8003 and 28 U.S.C. 158(a). *See* FED. R. BANKR. P. 8001, 28 U.S.C. § 158(a). Leave to appeal an interlocutory order may be granted when the order from which an appeal is taken (i) "involves a controlling question of law," (ii) the question of law is one in "which there is substantial ground for difference of opinion," and (iii) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." *See Abel v. Shugrue (In re Ionosphere Clubs, Inc.)*, 179 B.R. 24, 28 (S.D.N.Y. 1995).

### 1.    Controlling Question of Law

11.    Appeal from an order implicates a "controlling question of law," if (1) reversal of the order would terminate the action, or (2) determination of the issue on appeal would materially affect the outcome of the litigation. *IBI Sec. Serv, Inc. v. National Westminster Bank USA (In re IBI Sec. Serv.)*, 174 B.R. 664, 670 (E.D.N.Y. 1994). In *Capen Wholesale, Inc. v. Michel (In re Capen Wholesale, Inc.)*, 184 B.R. 547 (N.D. Ill. 1995), the court held that a controlling issue of law need not be outcome determinative; it need only be an "important one, which could have significantly affected the bankruptcy proceedings below." *Id.* at 549.

12.    Here, the Order involves at least three critical and "controlling questions of law":

- ▪    Should amended section 546(c) of the Bankruptcy Code, which added the

words "subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof," be construed to mean that the existence of an unpaid balance on the pre-petition secured indebtedness, and the interim approval of the transfer of the pre-petition liens to secure the post-petition borrowings, renders valueless all reclamation claims rather than that reclamation claimants have an interest in the Goods or the proceeds thereof as of the date of the Reclamation Demand that is junior to the Lenders' interest in the Goods?

- Is the interest in goods held by a holder of a right of reclamation under the amended section 546(c) sufficient to require a senior secured creditor to marshal collateral?

- If marshalling is not available, is it enough for a secured creditor merely to assert the existence of a lien but continue to allow a debtor to use and convert the collateral, or must the secured creditor affirmatively exercise its lien rights and foreclose on the goods in order to defeat a right of reclamation.[4]

Because there is no case law on these issues in the Third Circuit or elsewhere in light of the recent amendments to section 546(c) or under applicable prior decisions analyzing state law reclamation rights, these issues are appropriate for appeal.

## 2.    Substantial Ground for Difference of Opinion

13.    S&S respectfully disagrees with the Court's decision concerning the foregoing "controlling questions of law." Contrary to the Opinion, S&S submits that the language "subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof" means that S&S' interest in the Goods is junior only to the Lenders' rights in the Goods that existed prior in time to S&S' Reclamation Demand. The distinction between "prior in time" and having "priority over" is critical to the outcome of this case. Because the pre-petition debt is presumably now paid off, S&S' junior interest in the Goods should now be senior to any other parties' interest in the Goods. S&S further submits that the case law under

---

[4]    In addition, there are controlling questions of law regarding whether S&S satisfied the irreparable harm and balancing of the equities requirement for a TRO. Although such issues are critical to the outcome of the TRO litigation, they do not relate directly to the merits of the overall litigation. However, S&S submits that such issues should be addressed in the appeal because it is likely that a significant amount of Goods subject to S&S' Reclamation Demand will be returned to AMS from its customers over the next several

the pre-amendment version of section 546(c) is neither controlling nor instructive on this issue because such older cases do not interpret the new statutory language.

14.    S&S further disagrees with the Court's conclusion that S&S' interest in the Goods pursuant to the Reclamation Demand does not give rise to an interest sufficient to require an vastly oversecured creditor from marshalling collateral. Such a holding would inappropriately provide a debtor with strong incentives to leave a nominal unpaid balance on its secured debt for the sole purpose of defeating reclamation claims even after the secured lender is paid off. That could not have been the intent of Congress when it amended section 546(c) for the purpose of enhancing reclamation rights. Accordingly, there is a substantial ground for a difference of opinion on the foregoing controlling questions of law.

15.    Finally, S&S disagrees with the Court's conclusion that the mere existence of a lien is sufficient to defeat a right of reclamation even if marshalling is not available. Such a holding provides that a secured creditor has no affirmative duty to act or enforce its lien rights when goods are sought to be reclaimed. Instead, a secured creditor may allow a debtor to continue using the goods and convert the goods to collateral beyond the reach of a reclaiming seller. Such a holding is contrary to one of the fundamental principles of law, that those who fail to enforce their rights in the face of a competing claim are deemed to have waived their rights. S&S submits that in order for a secured creditor to defeat a reclamation claim, the secured creditor must affirmatively exercise its right to foreclose on the property.

## 3.    Appeal Will Advance the Litigation

16.    Deciding the controlling questions of law and reversal of the Order will materially advance the ultimate determination of the litigation for a least three reasons. First,

_____

weeks and months and should be thus subject to a TRO or preliminary injunction.

544861 1

over the next several weeks and months, AMS will be receiving returns of significant amounts of

the Goods subject to the Reclamation Demand. An appeal of the foregoing questions of law will

determine whether AMS must return such Goods to S&S or may dispose of them pursuant to a

sale of its assets. Second, review of these questions will also determine whether S&S is entitled

to an administrative claim for the Goods not otherwise subject to administrative treatment under

section 503(b)(9). Third, the appeal will advance the process of determining the appropriate

treatment of claims in AMS' forthcoming Reclamation Claims Report, which will inevitably

indicate that reclamation claimants get nothing more than general unsecured claims. Indeed, this

last issue will affect not only S&S, but all other sellers who asserted reclamation demands.

Accordingly, appellate review of these questions will determine the outcome of this adversary

proceeding and the core litigation concerning the Reclamation Claims Report.

9

WHEREFORE, S&S respectfully requests that the Court (A) grant S&S leave to

appeal the Order, and (B) grant such other and further relief as the Court deems just proper and

equitable.

Dated:  February 1, 2007

SAUL EWING LLP
Mark Minuti (No. 2659)
Jeremy W. Ryan (No. 4057)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
Tel.:  (302) 421-6840
Fax:  (302) 421-5873

- and-

KELLEY DRYE & WARREN LLP
Craig A. Wolfe
Robert L. LeHane
101 Park Avenue
New York, New York 10178
Tel:  (212) 808-7800
Fax:  (212) 808-7897

Co-Counsel to Plaintiff
Simon & Schuster, Inc.

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ADVANCED MARKETING SERVICES, | ) Case No. 06-11480 (CSS) |
| INC., a Delaware corporation, | ) (Jointly Administered) |
| et al. | ) |
|           Debtors. | ) |
| | ) |
| SIMON & SCHUSTER, INC., | ) |
| | ) Adv. Proc. No.07-50004(CSS) |
|         Plaintiff, | ) |
| | ) |
|    v. | ) Related Adv. Doc. No. 8 |
| | ) |
| ADVANCED MARKETING SERVICES, | ) |
| INC., | ) |
| | ) |
|         Defendant. | ) |

**ORDER**

For the reasons set forth in the Court's Opinion of
this date, the *Emergency Application of Simon & Schuster
for Temporary Restraining Order Pursuant to Bankruptcy Rule
7065 [Docket No. 8]* is DENIED without prejudice.

Christopher S. Sontchi
United States Bankruptcy Judge

Dated: January 22, 2007

# EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ADVANCED MARKETING SERVICES, | ) | Case No. 06-11480 (CSS) |
| INC., a Delaware corporation, | ) | (Jointly Administered) |
| *et al.* | ) | |
| Debtors. | ) | |
| ——————————————— | ) | |
| SIMON & SCHUSTER, INC., | ) | |
| | ) | Adv. Proc. No.07-50004(CSS) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Related Adv. Doc. No.8 |
| | ) | |
| ADVANCED MARKETING SERVICES, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION[1]

Mark D. Collins
Russell C. Silberglied (Argued)
Paul N. Heath
Marcos A. Ramos
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE  19899

Suzzanne S. Uhland
Austin K. Barron
Alexandra B. Feldman
O'Melveny & Myers LLP
275 Battery Street
San Francisco, CA  94111

Proposed Counsel for Debtors
and Debtors in Possession

Kurt F. Gwynne (Argued)
Kimberly E.C. Lawson
REED SMITH LLP
1201 Market Street
Suite 1500
Wilmington, DE  19899

Paul S. Arrow
BUCHALTER NEMER
1000 Wilshire Blvd.,
15th Floor
Los Angeles, CA  90017

Counsel for Wells
Fargo Foothill, Inc.

---

[1] This Opinion constitutes the Court's findings of fact and conclusions
of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

Mark Minuti
Jeremy W. Ryan
SAUL EWING LLP
222 Delaware Avenue
Suite 1200
P.O. Box 1266
Wilmington, DE  19899

Bruce Buechler (Argued)
LOWENSTEIN SANDLER P.C.
65 Livingston Avenue
Roseland, NJ  07068

Proposed Counsel for
the Official Committee
Of Unsecured Creditors

Craig A. Wolfe (Argued)
Robert L. LeHane
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178

Counsel for Plaintiff,
Simon & Schuster, Inc.

Dated: January 22, 2007

SONTCHI, J. *Christopher S Sontchi*

This is an adversary proceeding brought by Simon & Schuster, Inc. ("S&S") to reclaim goods, pursuant to section 546(c) of the Bankruptcy Code. Before the Court is the *Emergency Application of Simon & Schuster for Temporary Restraining Order Pursuant to Bankruptcy Rule 7065 [Docket No. 8] (the "TRO Motion")*, which is opposed by the Debtors and the Debtors' secured lenders.[2] Because the goods that S&S seeks to reclaim are subject to prior secured liens, S&S is unable at this time to establish a likelihood of

---

[2] The Official Committee of Unsecured Creditors takes no position in connection with the TRO Motion.

success on the merits of its reclamation claim.[3]    Thus, for the reasons stated below, the TRO Motion is denied without prejudice.

### I.    Statement of Facts[4]

On December 29, 2006, Advanced Marketing Services, Inc. ("AMS") and two of its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  That same day, S&S sent a reclamation demand to AMS.  On January 5, 2007, S&S commenced this adversary proceeding by filing a *Complaint for Reclamation of Goods Pursuant to 11 U.S.C. § 546(c) and Related Relief* (the "Complaint").  The Complaint seeks (i) reclamation of goods in the aggregate amount of $5,105,629.65 that S&S alleges were received pre-petition by AMS (the "Goods"), (ii) immediate payment to S&S of certain administrative expense claims, and (iii) an

---

[3]  In addition, S&S has failed to establish the existence of any irreparable harm or that the balance of equities favors entering an injunction.

[4]  The facts set forth herein are derived from the: (i) *Affidavit of Donald F. England In Support of the Emergency Application of Simon & Schuster for Temporary Restraining Order Pursuant to Bankruptcy Rule 7065 [Docket No. 9]*; (ii) *Affidavit of Curtis R. Smith Submitted in Support of Advanced Marketing Services, Inc.'s Opposition to the Emergency Application of Simon & Schuster for Temporary Restraining Order Pursuant to Bankruptcy Rule 7065 [Docket No. 18]*; and (iii) *Declaration of Daniel Whitwer of Wells Fargo Foothill, Inc. Pursuant to 28 U.S.C. §1746(2)*, all of which were admitted into evidence at the hearing on the TRO Motion.

accounting of the Goods.[5]   As of January 16, 2007, approximately $808,000 of inventory subject to S&S's reclamation claim remained in the Debtors' possession.   On January 17, 2007, the Court held a hearing on the TRO Motion.

AMS is a wholesaler of general interest books to membership warehouse clubs, including Costco Wholesale Corporation, SAM's Club, and BJ's Wholesale Club, as well as certain specialty retailers, e-commerce companies, traditional bookstores and bookstore chains.   AMS obtains most of its inventory directly from publishers, primarily on a fully returnable basis.   It also sells such books primarily on a fully returnable basis.   S&S is one of the largest third-party publishers from whom AMS obtains books. As with most of its suppliers, AMS obtains books from S&S on a fully returnable basis.

The Debtors and the lenders (the "Senior Lenders") are parties to that certain Loan and Security Agreement, dated as of April 27, 2004 (as amended from time to time, the "Senior Facility").   Wells Fargo Foothill, Inc. ("Foothill") is the Senior Lenders' agent under the Senior

---

[5] At the hearing on the TRO Motion, S&S's counsel stated that S&S now seeks reclamation of goods in the aggregate amount of $6,014,311.97. S&S did not submit any evidence, however, in support of the statement of counsel.   Thus, for purposes of the TRO Motion, S&S is seeking reclamation of goods in the aggregate amount of $5,105,629.65.

4

Facility. The Debtors' obligations under the Senior Facility are secured by a floating lien on substantially all of the Debtors' assets, including inventory. As a result, the Senior Lenders' first priority security interest extends to the Goods that are the subject of the Complaint. The Senior Facility is an asset-based lending agreement that provides for a revolving line of credit (the "Revolving Loans") up to a maximum commitment level of $90 million. Availability under the Senior Facility is determined by a borrowing base formula based upon the Debtors' accounts receivable and inventory subject to adjustments and reserves established by Foothill and the Senior Lenders. The Senior Lenders assert, and the Debtors have stipulated and agreed, that, as of the Petition Date, the Debtors were obligated to the Senior Lenders for the principal amount drawn on the Revolving Loans plus accrued and unpaid interest and certain additional unpaid fees and expenses in an amount not less than $41,514,347.58 (collectively, the "Senior Indebtedness"). The Senior Facility imposed numerous restrictions on the Debtors' ability to access their cash. Prior to the Petition Date virtually all of the Debtors' cash from operations was swept daily into an account controlled by Foothill and

applied to the loans outstanding, then readvanced as loans in accordance with the borrowing base formula.

On December 29, 2006, the Debtors filed a motion seeking an interim order for post-petition financing. On January 3, 2007, this Court entered an interim order authorizing the Debtors to obtain post-petition financing (the "Interim DIP Order"). Pursuant to the Interim DIP Order and the related DIP Loan Agreement (as defined in the Interim DIP Order), the Debtors are able to continue to receive financing from Foothill and the other Senior Lenders, including cash advanced and other extensions of credit, but now in an aggregate principal amount of $75 million (the "DIP Loan"). The DIP Loan is governed by the DIP Loan Agreement and the Interim DIP Order. The terms of the Debtors' post-petition financing did not extinguish the Debtors' obligations under the Senior Facility or discharge or release any related security interests. Instead, the DIP Loan Agreement is a "creeping roll up" and contemplates the Debtors' satisfaction of their pre-petition obligations to the Senior Lenders through application of Cash Collateral (as defined in the Interim DIP Order), which is derived primarily from the proceeds from the sale of the Debtors' inventory, all before payment of Debtors' post-petition obligations under the DIP Loan.

6

The DIP Loan is secured by a lien on all of the Debtors' pre-petition, present and future assets. Pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, this lien is senior to all other liens other than validly perfected Pre-Petition Liens (as defined in the Interim DIP Order). In addition, pursuant to section 364(c)(1) of the Bankruptcy Code, the Senior Lenders are granted a superpriority administrative expense claim senior to all other administrative claims.

The DIP Loan Agreement also provides that the Pre-Petition Liens granted to the Senior Lenders continue in full force and effect, and secure repayment of all obligations owed to the lenders under the DIP Loan Agreement. Specifically, Section 17.10 provides that:

> Each Borrower hereby ratifies, adopts, confirm and agrees that (i) the Senior Agreement and each document comprising the Senior Facility is, and shall continue to be, in full force and effect and is hereby ratified and confirmed in all respects in relation to this Agreement except that on and after the Closing Date all references in any such document comprising the Senior Facility to "the Agreement", "thereto", "thereof", "thereunder" or words of like import referring to the Senior Agreement shall mean this Agreement; and (ii) *to the extent that any such document comprising the Senior Facility purports to assign or pledge to the Senior Agent of the benefit of the Senior Lenders a security interest*

> *in or lien on, any collateral as*
> *security for the Senior Obligations,*
> *such pledge, assignment or grant of the*
> *security interest or lien is hereby*
> *ratified and confirmed in all respects*
> *in favor of Agent for the benefit of*
> *Lenders in connection with this*
> *Agreement and the Loan Documents to*
> *secure the Obligations.*

DIP Loan Agreement at §17.10 (emphasis added).

As of January 16, 2007, the Debtors' aggregate indebtedness under the Senior Facility and the DIP Loan is approximately $26.5 million. That amount is comprised of approximately $13 million under the Senior Facility and $13.5 million under the DIP Loan.

## II. Jurisdiction

The Court has jurisdiction over this adversary proceeding, pursuant to 28 U.S.C. §1334(b). This is a core proceeding, pursuant to 28 U.S.C. §157(b)(2)(A), (E), (H), and (O).

## III. Discussion

"Generally speaking, courts apply the standards for granting a preliminary injunction in determining the propriety of issuing a temporary restraining order." *Tootsie Roll Industries, Inc. v. Sathers, Inc.*, 666 F. Supp. 655, 658 (D. Del. 1987). In order to grant a temporary restraining order, the Court "must be convinced

8

that the following factors favor granting preliminary relief: (1) the likelihood that the moving party will succeed on the merits; (2) the extent to which the moving party will suffer irreparable harm without injunctive relief; (3) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and (4) the public interest." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002).

### A. Probability Of Success On The Merits

In order to obtain injunctive relief, the movant must demonstrate a "strong probability of success on the merits of the litigation." *Phillips Petroleum Co. v. U.S. Steel Corp.*, 616 F. Supp. 335, 337 (D. Del. 1985). "The reclaiming seller has the burden of establishing each element of section 546(c) by a preponderance of the evidence." *Allegiance Healthcare Corp. v. Primary Health Sys. (In re Primary Health Sys.)*, 258 B.R. 111, 114 (Bankr. D. Del. 2001). Thus, S&S must establish that there is a strong probability that it will establish it has a right to reclaim the Goods under section 546(c) of the Bankruptcy Code. S&S has not met this burden.

The Goods are subject to the Senior Lenders' first priority pre-petition and post-petition liens and claims.

Section 546(c)(1), as amended in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), explicitly provides that the rights of a seller of goods are "subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof." 11 U.S.C. §546(c)(1). Accordingly, under the express language of §546(c)(1) of the Bankruptcy Code, as amended, the Senior Lenders' pre-petition and post-petition liens on the Debtors' inventory are superior to S&S's reclamation claim.[6] For this reason alone, S&S has failed to establish it any likelihood of success in establishing it has a valid reclamation right under section 546(c) of the Bankruptcy Code.

Nonetheless, S&S argues that its reclamation claim is only subject to Foothill's pre-petition liens under the Senior Facility and since the Senior Facility will soon be satisfied through the "creeping rollup" under the DIP Loan, S&S ultimately will succeed on the merits of its reclamation claim. This argument fails for three reasons.

---

[6] The Court would reach the same result under section 546(c) as it existed prior to BAPCPA. *See Yenkin-Majestic Paint Corp. v. Wheeling-Pittsburgh Steel Corp. (In re Pittsburgh-Canfield Corp.)*, 309 B.R. 277, 283-88 (B.A.P. 6th Cir. 2004) (pursuant to pre-BAPCPA section 546(c) of the Bankruptcy Code and UCC section 2-702, sellers' reclamation claims in respect of goods to debtors were subject to senior secured lenders' floating lien on such goods); *In re Primary Health Sys., Inc.*, 258 B.R. at 114 ("a creditor with a prior perfected security interest in inventory which contains an after-acquired property clause is a good faith purchaser under the UCC"); and *Gayley & Lord Inc. v. Arley Corp. (In re Arlco, Inc.)*, 239 B.R. 261, 270-71 (Bankr. SDNY 1999) (same).

First, it ignores the fact that the Senior Facility is still in place. Although the Senior Facility may be satisfied at some future date, S&S has failed to establish when that will occur and, more importantly, whether any of the Goods subject to its reclamation claim will still be in the Debtors' possession at that time.

Second, this argument ignores the terms of the Interim DIP Order, which provide, among other things, that the pre-petition liens secure the post-petition indebtedness under the DIP Loan. While this "cross-collateralization" provision may or may not be included in the final order approving the DIP Loan, it is contained in the Interim DIP Order, which was entered after notice to S&S. Thus, as the matter stands today, the satisfaction of the Senior Facility is of no moment. Even if the Senior Facility is satisfied, the Senior Lenders' pre-petition and post-petition liens on the Debtors' inventory are superior to S&S's reclamation claim.[7]

Third, S&S's reliance on *In re Phar-Mor, Inc.*, 301 B.R. 482 (Bankr. N.D. Oh. 2003) in support of its argument is not persuasive. *Phar-Mor* is easily distinguished from the case at hand. In *Phar-Mor*, the prior secured lenders

---

[7] In addition, the adequate protection liens attach to the pre-petition collateral, including the Goods.

11

had already been paid in full from collateral other than the reclaimed goods. *Id.* The court in *Phar-Mor*, specifically stated

> these Vendors had reclamation claims that were subject to and not extinguished by the prior security interest of Pre-Petition Lenders. When a seller's right of reclamation is subject to the interest of a prior secured creditor, the value of that seller's claim depends on the actual disposition of the subject goods. Pre-Petition Lenders chose to release their security interests and were paid in full through the Interim and Final DIP Orders by the DIP Facility. Thus, the value of the Vendors' reclamation claims is not affected by the interests of Pre-Petition Lenders.

*Id.* at 497.    That is simply not the case here.    As set forth above, the Senior Lenders have not been paid in full, and S&S's reclamation claim is still subject to their interests.    Moreover, the Senior Facility is being paid down, in part, through the sale of the Goods.

At the end of the day, S&S is doing little more than urging the Court to apply the doctrine of marshaling.[8] However, "unsecured creditors cannot invoke the equitable

---

[8] "Marshaling of assets applies when a senior secured creditor can collect on its debt against more than one property or fund held by the debtor but a junior secured creditor can only proceed against one of those sources. Assuming certain elements are met, the process then requires the senior secured creditor to first collect its debt against the collateral other than that in which the junior secured creditor holds an interest, thereby leaving that collateral for the junior secured creditor's benefit." *Pittsburgh-Canfield Corp.*, 309 B.R. at 291 (citations and emphasis omitted).

doctrine of marshaling." *Pittsburgh-Canfield Corp.*, 309 B.R. at 291. Moreover, the Senior Facility and the DIP Loan Agreement specifically provide that the lenders have no duty to marshal. Because marshaling does not apply to an unsecured creditor such as S&S, they cannot direct the Senior Lenders to satisfy their claim out of collateral other than the Goods.

Based on the foregoing, S&S has failed to establish there is a strong probability it will succeed on the merits of its reclamation claim. Thus, this factor weighs heavily against granting the TRO Motion.

**B.    Irreparable Harm**

"In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 93d Cir. 1989). "[I]njunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 92 (3d Cir. 1992) (citations omitted). Further, "[t]he availability of adequate monetary damages belies a claim of irreparable injury." *Frank's GMC Truck Center, Inc. v.*

13

*General Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988). The Third Circuit has also noted "that a purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement." *Id.* (citing *Morton v. Beyer*, 822 F.2d 364, 372 (3d Cir. 1987).)

S&S argues that the relief it requests is necessary in order to prevent any buyer of AMS's assets from returning the Goods to S&S and demanding a credit, and to prevent S&S from incurring additional expenses for replacement goods to other distributors who are working to satisfy the demands of AMS's customers. AMS, under its contract with S&S, has obtained the Goods on a fully returnable basis – S&S cannot argue that it will be irreparably harmed by the exercise of the AMS's contractual rights in the future by either AMS or its assignee. Further, S&S's harm is capable of being remedied by monetary compensation. By its own statement, S&S is trying to prevent itself from incurring wrongful credits and additional expenses.

Therefore, because S&S has failed to establish the existence of any irreparable harm, this factor weighs against granting the TRO Motion.

## C. **Balance of Equities**

The third factor in the preliminary injunction analysis is the balancing of equities. In applying this

14

factor, "a court should consider whether granting the requested relief will result in greater harm to the party on whom it is imposed than its denial will have on the party who seeks it." *Farberware, Inc. v. Mr. Coffee, Inc.*, 740 F. Supp. 291, 304 (D. Del. 1990) (internal citations omitted.)

This factor is neutral in this case. There can be no question that the Debtors would be harmed by the imposition of an injunction. Similarly, allowing the Debtors to continue to sell the Goods will probably result in rendering S&S's reclamation claim worthless. Because S&S has the burden to establish that the balance of equities is in favor of granting the TRO Motion, however, the balancing of the equities weighs against granting the TRO Motion.

### D.    The Public Interest

S&S argues that the TRO has an impact on the public interest by "preserving the value of the Goods and Plaintiff's right to reclaimation." The Court does not find this argument persuasive. S&S further argues that "the public interest benefits when all parties expect that courts require compliance with the express textual requirements of statutory law." This statement has absolutely no bearing on the case at hand. S&S has not met their burden of proving that they do in fact have any

15

statutory rights.    As discussed above, S&S's Motion does not establish the likelihood that S&S will succeed on the merits of the claim.    The Court finds that the public interest is simply not implicated in this commercial dispute among sophisticated parties.

## IV.    **Conclusion**

This is a simple case.    Under the express language of §546(c)(1) of the Bankruptcy Code, as amended, the Senior Lenders' pre-petition and post-petition liens on the Debtors' inventory are superior to S&S's reclamation claim. For this reason, S&S has failed to establish it any likelihood (let alone a probability) of success in establishing it has a valid reclamation right under section 546(c) of the Bankruptcy Code.    Moreover, S&S has failed to establish the existence of any irreparable harm.    Finally, S&S has failed to meet its burden of proof of establishing that the balance of equities support granting an injunction.    In short, all of the factors relevant in this case weigh against entering an injunction.[9]    Thus, the TRO Motion is denied without prejudice.

---

[9] As discussed above, the public interest factor is simply inapplicable to this case.

16

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

**APPEAL TRANSMITTAL SHEET**

Case Number: _____ ○ BK ○ AP

　　If AP, related BK Case Number: _____

Title of Order Appealed:

_____

　　　　　Docket Number: _____　　　　Date Entered: _____

Item Transmitted: ○ Notice of Appeal　　　　　　○ Motion for Leave to Appeal
　　　　　　　　　○ Amended Notice of Appeal　　○ Cross Appeal
　　　　　　　　Docket Number: _____　　　Date Filed: _____

*Appellant/Cross Appellant:　　　　　　*Appellee/Cross Appellee

_____　　_____

Counsel for Appellant:　　　　　　　　Counsel for Appellee:

_____　　_____

_____　　_____

_____　　_____

_____　　_____

_____　　_____

*If additional room is needed, please attach a separate sheet.

Filing Fee paid?　○ Yes　○ No

IFP Motion Filed by Appellant?　○ Yes　○ No

Have Additional Appeals to the Same Order been Filed?　○ Yes　○ No
　　If so, has District Court assigned a Civil Action Number?　○ Yes ○ No　Civil Action # _____

Additional Notes:

_____

_____　　By: _____
Date　　　　　　　　　　　　　　　　　　　　Deputy Clerk

　　　　　　　　　　　　　　　　　　　　FOR USE BY U.S. BANKRUPTCY COURT

Bankruptcy Court Appeal (BAP) Number: _____
7/6/06