IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                              :
                                    :   Chapter 11
ADVANCED MARKETING                  :
SERVICES, INC., et al.,             :   Case No. 06-11480 (CSS)
                                    :   (Jointly Administered)
            Debtors,                :
                                    :
_____     :
SIMON & SCHUSTER, INC.,             :
                                    :
            Plaintiff,              :   Adv. Proc. No. 07-50004 (CSS)
      v.                            :
                                    :   Re: Dkt. Nos. 27, 29, 30
ADVANCED MARKETING                  :
SERVICES, INC.,                     :   Obj. Deadline: 2/14/07
                                    :   Hrg. Date: N/A
                                    :
            Defendant.              :

## ADVANCED MARKETING SERVICES, INC.'S ANSWER IN OPPOSITION TO SIMON & SCHUSTER, INC.'S MOTION FOR LEAVE TO APPEAL

Dated: February 12, 2007
      Wilmington, Delaware    Mark D. Collins (No. 2981)
                              Russell C. Silberglied (No. 3462)
                              Paul N. Heath (No. 3704)
                              Marcos A. Ramos (No. 4450)
                              RICHARDS, LAYTON & FINGER, P.A.
                              One Rodney Square
                              Wilmington, Delaware  19899
                              (302) 651-7700

                              -and-

                              Suzzanne S. Uhland
                              Austin K. Barron
                              Alexandra B. Feldman
                              O'MELVENY & MYERS LLP
                              275 Battery Street
                              San Francisco, California  94111
                              (415) 984-8700

                              ATTORNEYS FOR DEBTORS
                              AND DEBTORS IN POSSESSION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..........................................ii

INTRODUCTION AND SUMMARY OF ARGUMENT............................1

NATURE AND STAGE OF PROCEEDING.................................2

STATEMENT OF FACTS.............................................6

ARGUMENT.....................................................11

I.     THE DENIAL OF A REQUEST FOR A TEMPORARY
       RESTRAINING ORDER IS NOT AN APPEALABLE
       INTERLOCUTORY ORDER. ..................................11

II.    S&S HAS WAIVED CERTAIN OF THE ISSUES IT SEEKS
       LEAVE TO APPEAL. ......................................17

III.   S&S BOTH IGNORES AND MISTATES THE BANKRUPTCY
       COURT'S OPINION. ......................................21

IV.    S&S HAS NOT DEMONSTRATED THAT INTERLOCUTORY
       REVIEW IS EITHER JUSTIFIED OR APPROPRIATE. ............24

       A.   STANDARDS FOR LEAVE TO APPEAL. .....................24

       B.   S&S HAS NOT DEMONSTRATED THAT ITS APPEAL
            INVOLVES A CONTROLLING QUESTION OF LAW ................26

       C.   S&S HAS NOT DEMONSTRATED A SUBSTANTIAL
            GROUND FOR DIFFERENCE OF OPINION .....................30

       D.   S&S HAS NOT DEMONSTRATED THAT ITS APPEAL
            WILL MATERIALLY ADVANCE THE ULTIMATE
            TERMINATION OF THE LITIGATION ........................33

       E.   S&S HAS NOT DEMONSTRATED EXCEPTIONAL
            CIRCUMSTANCES SUFFICIENT TO JUSTIFY
            INTERLOCUTORY REVIEW.  ...............................36

CONCLUSION...................................................39

i

## TABLE OF AUTHORITIES

### CASES

*Abel v. Shugrue (In re Ionosphere Clubs, Inc.)*,
179 B.R. 24 (S.D.N.Y. 1995) ........................ 25

*Callwood v. Questel*,
883 F.2d 272 (3d Cir. 1989)........................ 36

*Capen Wholesale, Inc. v. Michel (In re Capen Wholesale, Inc.)*, 184 B.R. 547 (N.D. Ill. 1995)............. 25, 29

*Cardona v. Gen. Motors Div.*,
939 F. Supp. 351 (D.N.J. 1996)................... 26, 31

*Clark v. K-Mart Corp.*,
979 F.2d 965 (3d Cir. 1992)..................... 15, 28

*County Mun. Employees' Supervisors' & Foremen's Union Local 1001 v. Laborers' Int'l Union of N.A.*,
365 F.3d 576 (7th Cir. 2004) ....................... 16,

*In re Dairy Mart Convenience Stores, Inc.*,
302 B.R. 128 (Bankr. S.D.N.Y. 2003).................. 19

*In re Del. & Hudson Ry. Co.*,
96 B.R. 469 (D. Del. 1989)................... 24, 25, 26

*EF Operating Corp. v. Am. Bldgs.*,
993 F.2d 1046 (3d Cir. 1993)....................... 20

*In re Edison Bros. Stores, Inc.*,
1996 WL 363806 (D. Del. June 27, 1996)............. 25,

*Gardiner v. Virgin Is. Water & Power Auth.*,
145 F.3d 635 (3d Cir. 1998)....................... 20

*IBI Sec. Serv., Inc. v. Nat'l Westminster Bank USA (In re IBI Sec. Serv., Inc.)*,
174 B.R. 664 (E.D.N.Y. 1994).................... 24, 29

*In re Kaiser Group Int'l Inc.*,
399 F.3d 558 (3d Cir. 2005)....................... 18

*Katz v. Carte Blanche Corp.*,
496 F.2d 747 (3d Cir. 1974)....................... 26

*In re Magic Rests., Inc.*,
202 B.R. 24 (D. Del. 1996).................. 25, 33, 36

*Mathieson v. Harry F. Shea & Co. (In re Mathieson)*,
75 B.R. 340 (N.D. Ill. 1987)........................ 12

*Murray v. Silberstein*,
882 F.2d 61 (3d Cir. 1989).......................... 21

*N.J. Hosp. Assoc. v. Waldman*,
73 F.3d 509 (3d Cir. 1995).......................... 15

*Neuner v. C.G. Capital Ventures-I, L.P. (In re Sharps
Run Assocs.)*, 157 B.R. 766 (D.N.J. 1993)......... 31, 33

*P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*,
161 F.Supp.2d 355 (D.N.J. 2001).............. 30, 31, 35

*In re Powell*,
2006 WL 3208843 (E.D.Pa. Nov. 3, 2006). .. 24, 30-33, 35

*Reliance Acceptance Corp. v. Levin (In re Reliance
Acceptance Group, Inc.)*,
235 B.R. 548 (D. Del. 1999).......................... 12

*Richardson v. Kennedy*,
418 F.2d 235 (3d Cir. 1969).......................... 12

*Robinson v. Lehman*,
771 F.2d 772 (3d Cir. 1985).......................... 12

*Shell Petroleum, Inc. v. U.S.*,
182 F.3d 212 (3d Cir. 1999).......................... 18

*Simon v. Robinson*, 196 Fed.Appx. 54 (3d Cir. 2006)........ 12

*Singh v. Daimler-Benz, AG*,
800 F. Supp. 260 (E.D.Pa. 1992)...................... 32

*Trotter v. Perdue Farms, Inc.*,
168 F. Supp. 2d 277 (D. Del. 2001)................... 31

*United Parcel Serv., Inc. v. Int'l Bhd. of Teamsters
Local No. 430*,
55 F.3d 138 (3d Cir. 1995).......................... 18

*U.S. v. Local 560*,
     974 F.2d 315 (3d Cir. 1992)....................... 14, 34

*Univ. of Tex. v. Camenisch*,
     451 U.S. 390 (1981).............................. 14, 15

**STATUTES**

28 U.S.C. § 1292.................................. 11, 25, 26

28 U.S.C. § 158......................................... 25

**MISCELLANEOUS**

16 Wright & Miller, <u>Federal Practice and Procedure</u> §
     3930 at 419-20....................................... 33

## INTRODUCTION AND SUMMARY OF ARGUMENT

As noted by the Bankruptcy Court in its opinion, this is a "simple case" about a movant who failed to meet its burden to demonstrate that *any* of the relevant factors weighed in favor of the grant of the extraordinary relief of a temporary restraining order ("TRO"). Now, after failing to persuade the Bankruptcy Court that it should issue a TRO, movant Simon & Schuster, Inc. ("S&S") again asks the Court for extraordinary relief, this time for immediate appellate review of the Bankruptcy Court's denial of S&S's TRO application.

S&S is not entitled to an interlocutory appeal for multiple reasons. First, and most fundamentally, an appeal from a denial of a temporary restraining order is almost never granted, and indeed appears never to have been granted in this Circuit, because TRO's are the very definition of interlocutory in nature; the only thing that the court has determined is not to preserve the purported status quo. Second, S&S has waived, by not presenting to the Bankruptcy Court, certain of the issues it now wants to press on appeal. Third, S&S plainly has misread the Bankruptcy Court's Opinion, and ignores, among other things, that the Opinion rests on multiple, alternative holdings, such that even if S&S were to win on certain

issues of the appeal but not others, the holding of the Opinion would be unchanged. Fourth, S&S simply fails to meet the standards for leave to appeal an interlocutory order. In short, S&S's motion for leave to appeal (the "Motion") should be denied.

## NATURE AND STAGE OF PROCEEDING

On December 29, 2006, Advanced Marketing Services, Inc. (the "Debtor"), one of the above-captioned debtors (collectively, the "Debtors"),[1] filed a voluntary Chapter 11 petition. That same day, S&S sent a reclamation demand to the Debtor.

On January 5, 2007, S&S commenced this adversary proceeding by filing its Complaint for Reclamation of Goods Pursuant to 11 U.S.C. § 546(c) and Related Relief [Dkt. No. 1] (the "Complaint"). The Complaint seeks reclamation of certain goods which S&S alleges were received prepetition by the Debtor (the "Goods"), to compel immediate payment to S&S of certain administrative expense claims and for an accounting.

On January 8, 2007, the Debtors filed their Amended Motion of Debtors and Debtors in Possession for an Order

---

[1] The Debtors are the following entities: Debtor, a Delaware corporation, Publishers Group Incorporated, a California Corporation ("PGI") and Publishers Group West Incorporated, a California corporation ("PGW"). PGI is wholly-owned by Debtor, and PGW is wholly-owned by PGI. Debtor, PGI, and PGW are borrowers under the Senior Facility and the DIP Loan Agreement (defined below).

Establishing Procedures for Reconciliation of Reclamation Claims Pursuant to Sections 105(a) and 546(c) of the Bankruptcy Code [Bk. Dkt. No. 86] (the "Amended Reclamation Motion"). Pursuant to the Amended Reclamation Motion, the Debtors asked the Bankruptcy Court to approve certain uniform procedures for the reconciliation and potential allowance of claims asserted by all reclamation creditors, including S&S.

A week following the filing of the Complaint and after the Debtors filed their Amended Reclamation Motion, on January 11, 2007, S&S filed its Emergency Application of Simon & Schuster for Temporary Restraining Order Pursuant to Bankruptcy Rule 7065 [Dkt. No. 8] (the "TRO Motion"). The TRO Motion sought to enjoin the Debtor from selling the Goods pending a trial on a request for, presumably, a permanent, mandatory injunction requiring reclamation. S&S's request was extraordinary, because if the Debtor was unable to sell books from one of its largest suppliers, its operations would be dealt a significant blow.

On January 12, the Debtor filed a preliminary objection to the TRO Motion [Dkt. No. 11], and on January 17, 2007, the Debtor filed its Answering Brief in Opposition to the Emergency Application of Simon & Schuster for Temporary Restraining Order Pursuant to Bankruptcy Rule

3

7065 [Dkt. No. 17] (the "TRO Answering Brief").    That same day, S&S filed its (i) Reply Brief in support of its TRO Motion [Dkt. No. 19] (the "TRO Reply") and (ii) Objection to the Debtor's Amended Reclamation Motion [Bk. Dkt. No. 149] (the "Objection").    Also on January 17, 2007, the Bankruptcy Court conducted a hearing on the TRO Motion.

On January 22, 2007, the Bankruptcy Court issued its Opinion [Dkt. No. 23] and Order [Dkt. No. 24] denying the TRO Motion.    In its Opinion, the Bankruptcy Court found that S&S had not sustained its burden to demonstrate that *any* of the factors necessary to justify the grant of a TRO -- likelihood of success on the merits, irreparable harm, balance of the equities or the public interest -- favored the grant of the TRO requested by S&S.    See Opinion pp. 8-16.

On January 24, 2007, the Bankruptcy Court entered its Order Establishing Procedures for Reconciliation of Reclamation Claims Pursuant to Sections 105(a) and 546(c) of the Bankruptcy Code [Bk. Dkt. No. 248] (the "Reclamation Order").    The Reclamation Order provides certain procedures for the Debtors' uniform treatment of all reclamation creditors, including S&S.    Those procedures require the Debtors (among other things) to timely file a report which identifies and proposes specific treatment for each

reclamation claim, including any administrative expense claim to which the reclaiming creditor might be entitled. See Reclamation Order ¶ 2. S&S did not appeal from the Bankruptcy Court's entry of the Reclamation Order by February 5, 2007, the deadline for filing such an appeal.

On February 1, 2007, S&S filed its Notice of Appeal [Dkt. No. 27], Motion [Dkt. No. 29] and Request for Certification for Direct Appeal to Circuit Court of Appeals [Dkt. No. 30] (the "Request"). By its Motion, S&S has asked the Court for leave to appeal the Opinion and Order, even though the Opinion and Order only determined a TRO motion. By its Request, filed the same day as its Motion, S&S has asked the Court to certify the Motion for immediate appeal to the Third Circuit Court of Appeals under the new procedures of the BAPCPA. See Request.

This is the Debtor's Opposition to S&S's Motion. Simultaneously herewith, the Debtor also is filing its Opposition to S&S's Request, which relies in large part on this Opposition to the Motion.

5

## STATEMENT OF FACTS[2]

### A.    Overview of The Debtor's Business Operations and its Business with S&S.

Founded in 1982, the Debtor is a wholesaler of general interest books to membership warehouse clubs, including Costco Wholesale Corporation, SAM's Club (a unit of Wal-Mart Stores, Inc.), and BJ's Wholesale Club, as well as certain specialty retailers, e-commerce companies, traditional bookstores and bookstore chains.[3]    The Debtor obtains most of the books it wholesales directly from publishers, primarily on a fully returnable basis, and it also sells such books primarily on a fully returnable basis.    As of their petition date, the Debtors served approximately 1,078 membership warehouse locations in the United States.

S&S is one of the largest third-party publishers from whom the Debtor obtains books.    For Fiscal Year 2006, S&S was AMS's 5th largest vendor, with gross sales of

---

[2] The facts set forth herein are drawn from two primary sources: (1) the two affidavits admitted into evidence at the TRO hearing:    (i) the Affidavit of David F. England in Support of Emergency Application of Simon & Schuster for Temporary Restraining Order Pursuant to Bankruptcy Rule 7065 [Dkt. No. 9] and (ii) the Affidavit of Curtis R. Smith Submitted in Support of Advanced Marketing Services, Inc.'s Opposition to the Emergency Application of Simon & Schuster for Temporary Restraining Order Pursuant to Bankruptcy Rule 7065 [Dkt. Nos. 18 and 20]; and (2) the Declaration of Curtis R. Smith in Support of Chapter 11 Petitions and Request for First Day Relief [Bk. Dkt. No. 12].

[3] The other Debtor businesses are not described herein because they are not relevant to this adversary proceeding.

$72,437,342.  Through the 2nd quarter of Fiscal Year 2007, S&S was AMS's 3rd largest vendor, with gross sales of $28,699,597.10.  As with other publishers, the Debtor obtains books from S&S primarily on a fully-returnable basis.

## B.    Principal Indebtedness.

The Debtor, PGW and PGI, as borrowers, the lenders party thereto (the "Senior Lenders") and Wells Fargo Foothill, as agent, are parties to that certain Loan and Security Agreement, dated as of April 27, 2004 (as amended from time to time, the "Senior Facility").  The Debtors' obligations under the Senior Facility are secured by a floating lien on substantially all of their assets, including (importantly for the purposes of this adversary proceeding) inventory.  As a result, the Senior Lenders' first priority security interest extends to the Goods identified in the Complaint, to the extent not already sold, and the proceeds of such sales.  The Senior Facility is an asset-based lending agreement that provides for a revolving line of credit (the "Revolving Loans") up to a maximum commitment level of $90 million.

Availability under the Senior Facility is determined by a borrowing base formula based upon the Debtors' accounts receivable and inventory (including inventory

purchased by the Debtors from S&S), subject to adjustments and reserves established by Foothill and the Senior Lenders. The Senior Lenders assert, and the Debtors have stipulated and agreed, that as of the petition date, the Debtors were obligated to the Senior Lenders for the principal amount drawn on the Revolving Loans plus accrued and unpaid interest and certain additional unpaid fees and expenses in an amount not less than $41,514,347.58 (collectively, the "Senior Indebtedness"). Prior to the petition date (and continuing postpetition by way of the DIP Loan (defined below), also provided by Foothill, as agent for the Senior Lenders), virtually all of the Debtors' cash from operations is swept daily into an account controlled by Foothill and applied to the loans outstanding, then readvanced as loans in accordance with the borrowing base formula.

## C.   The Postpetition Financing Arrangement.

On December 29, 2006, the Debtors filed a motion seeking an interim order for postpetition financing (the "Motion for Interim Order") and on January 3, 2007 the Court entered an interim order authorizing the Debtors to obtain postpetition financing (the "Interim DIP Order").[4]

---

[4] A hearing on final approval of the DIP facility is scheduled for today.

Pursuant to the Interim DIP Order and the related DIP Loan Agreement (as defined in the Interim DIP Order), the Debtors are able to continue to receive financing from Foothill and the other Senior Lenders including cash advances and other extensions of credit, but now in an aggregate principal amount of $75 million (the "DIP Loan"). The actual credit agreement evidencing the DIP Loan is so similar to the pre-petition credit agreement that the Debtors simply presented a blackline to the Bankruptcy Court at the hearing on the Interim DIP Order. It is far from a new loan, with a new lender and all new terms, as S&S might like to portray it to be.

Moreover, the terms of the DIP Loan and the Interim DIP Order did not extinguish the Debtors' obligations under the prepetition Senior Facility or discharge or release any related security interests. Instead, the DIP Loan Agreement contemplates the Debtors' satisfaction of their prepetition obligations to the Senior Lenders through application of Cash Collateral (as defined in the Interim DIP Order), which is derived primarily from the proceeds from the sale of the Debtors' inventory (including S&S's Goods), all before payment of Debtors' postpetition obligations under the DIP Loan. (Interim Order ¶ 1.4; Motion for Interim Order ¶¶ 16, 33).

Pursuant to the DIP Loan, the Senior Lenders' prepetition lien is converted or "rolled" over time into a postpetition lien on all of the Debtors' prepetition, present and future assets, which lien is senior to all liens other than validly perfected Prepetition Liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code. (Interim Order ¶ 3.1.1). The Senior Lenders also are granted a superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code senior to all other administrative claims. (Interim Order ¶ 3.2). Additionally, the Interim DIP Order and DIP Loan provide that the Senior Lenders' prepetition security interests and liens are "ratified and confirmed in all respects in favor of the Agent for the benefit of the [DIP] Lenders in connection with the [DIP Loan Agreement] to secure the [Debtors' postpetition] Obligations". DIP Loan Agreement § 17.10; Opinion pp. 7-8. The Bankruptcy Court referred to this as "cross collateralization" in its Opinion. See Opinion p. 11.

## D.    Debtors' Amended Reclamation Motion.

On January 8, 2007, the Debtors filed their Amended Reclamation Motion. Pursuant to the Amended Reclamation Motion, the Debtors asked the Court to approve certain uniform procedures for the reconciliation and potential

allowance of claims asserted by all reclamation creditors. (See Amended Reclamation Motion ¶ 31). By way of example only, the Amended Reclamation Motion proposed that the Debtors would not take the position that an otherwise valid reclamation demand is rendered invalid by a reclamation creditor's failure to take "self-help" measures or to institute an adversary proceeding and a motion for an injunction. (Amended Motion ¶ 32).

S&S opposed the Debtors' Amended Reclamation Motion. (See Objection). As described above, the Bankruptcy Court approved the Amended Reclamation Motion as provided in the Reclamation Order. (*Supra* pp. 4-5). S&S did not appeal from the Bankruptcy Court's entry of the Reclamation Order by February 5, 2007, the appeal deadline. (*Supra* p. 5).

## ARGUMENT

### I.   THE DENIAL OF A REQUEST FOR A TEMPORARY RESTRAINING ORDER IS NOT AN APPEALABLE INTERLOCUTORY ORDER.

While the Motion should be denied for many reasons, perhaps the most fundamental one is that, in the Third Circuit, the denial of a temporary restraining order is *not* an order that is eligible for interlocutory review. To be sure, an order granting or denying an injunction may be appealed with leave of court, if the factors set forth in Section IV below are met. See 28 U.S.C. § 1292(a)(1).

Orders granting or denying a request for a temporary restraining order, however, are treated quite differently in this Circuit.

It is well-established in the Third Circuit that "[a]n appeal may not normally be taken from an order granting or denying a temporary restraining order." Simon v. Robinson, 196 Fed.Appx. 54, 56 (3d Cir. 2006) (internal quotation and citation omitted); see also Robinson v. Lehman, 771 F.2d 772, 782 (3d Cir. 1985) ("regarding the denial of Robinson's motion for a temporary restraining order, we are of the opinion that we lack jurisdiction to review this contention. The denial of a temporary restraining order is not generally appealable unless its denial decides the merits of the case or is equivalent to a dismissal of the claim."); Richardson v. Kennedy, 418 F.2d 235 (3d Cir. 1969) ("For the same reasons which governed our decision . . . that the issuance of a temporary restraining order under Fed.R.C.P. 65(b) was not an appealable order, we hold that the refusal to issue such an order is equally not appealable.").[5]   Indeed, the Third Circuit has never, in any

---

[5] When sitting as an appeals court, the district court applies the same standard as the circuit court when it considers an appeal from the lower court's decision on an application for a TRO or other injunctive relief. See Reliance Acceptance Corp. v. Levin (In re Reliance Acceptance Group, Inc.), 235 B.R. 548, 553 (D. Del. 1999) (applying same standard as circuit court when sitting in appeal from bankruptcy court's resolution of request for injunctive relief); Mathieson v.

reported opinion or opinion available on Westlaw or Lexis, accepted an interlocutory appeal of a denial of a temporary restraining order.

S&S suggests that an interlocutory appeal is appropriate because the Bankruptcy Court's "findings of fact and conclusions of law" "suggests that this Court has already concluded that all reclamation claims in these chapter 11 cases have been rendered valueless." See Motion ¶ 1. Leaving aside for the moment that the Opinion is not based on the concept of "valueless" (see *infra* Section III), S&S simply ignores the fact that the Bankruptcy Court only found that S&S had not demonstrated a "likelihood" of success on the merits, *not* that S&S could not establish the merits of its claims *at trial*. See, e.g., Opinion pp. 2-3 (finding that "S&S is unable *at this time* to establish a *likelihood* of success on the merits of its reclamation claim.") (emphasis added). Accordingly, S&S's main argument is based upon a clear misstatement of the Bankruptcy Court's ruling.

Moreover, if S&S were correct in its position that a ruling on the "likelihood of success on the merits"

---

Harry F. Shea & Co. (In re Mathieson), 75 B.R. 340, 341-342 (N.D. Ill. 1987) (as appeals court, district court could not review bankruptcy court's ruling on application for TRO where ruling on TRO was not equivalent to decision on motion for preliminary injunction and no exceptional circumstances justified review).

constitutes a ground for interlocutory appeal because it shows what the Bankruptcy Court has "already concluded", interlocutory appeals from TRO motions would be the norm rather than the extreme exception. After all, courts always must make a finding as to likelihood of success on the merits; it is the lead factor in a TRO analysis. Considering this very point, the United States Supreme Court has rejected S&S's primary contention. In University of Texas v. Camenisch, 451 U.S. 390, 394-395 (1981), like S&S here, the movant argued that the lower court's findings in connection with an injunction were tantamount to a resolution by the court on the merits. The Supreme Court disagreed:

> Since Camenisch's likelihood of success on the merits was one of the factors the District Court and the Court of Appeals considered in granting Camenisch a preliminary injunction, it might be suggested that their decisions were tantamount to decisions on the underlying merits and thus that the preliminary-injunction issue is not truly moot. . . . *This reasoning fails, however, because it improperly equates 'likelihood of success' with 'success,'* . . . .

Camenisch, 451 U.S. at 394-395 (emphasis added); see also United States v. Local 560, 974 F.2d 315, 330 (3d Cir. 1992) ("a decision on a preliminary injunction is, in effect, only a prediction about the merits of the case.").

The Third Circuit's rule against the review of TRO decisions is consistent with the Supreme Court's guidance as set forth in Camenisch. It also is supported by the Third Circuit's recognition, in the context of preliminary injunction rulings, that the lower court's resolution of an application for a preliminary injunction may, indeed, be only preliminary, and that any related findings of fact or conclusions of law are not binding on the lower court as it proceeds to determine other applications or the merits. See The New Jersey Hosp. Assoc. v. Waldman, 73 F.3d 509, 519 (3d Cir. 1995) ("Pending the district court's final decision on the merits, the findings of fact and conclusions of law made in conjunction with the preliminary injunction are indeed preliminary. As such, they do not foreclose any findings or conclusions to the contrary based on the record as developed at final hearing."); Clark v. K-Mart Corp., 979 F.2d 965, 969 (3d Cir. 1992) ("at that trial, because of the limited nature of the proceedings resulting in the preliminary injunction, any findings of fact and conclusions of law made at the preliminary stage are of no binding effect whatsoever."); accord Camenisch, 451 U.S. at 394-395 ("the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.").

Instead of requesting an interlocutory appeal, the proper procedural vehicle would have been for S&S to move for a preliminary injunction. See County Mun. Employees' Supervisors' & Foremen's Union Local 1001 v. Laborers' Int'l Union of N.A., 365 F.3d 576 (7th Cir. 2004). As the Seventh Circuit held in Laborers' Int'l Union:

> [Movants] argue that the district court's order is appealable because it has the 'effect' of denying an interlocutory injunction. But the only reason it might have such an effect would be their own strategy; rather than asking for a preliminary injunction, the law firms immediately appealed. That maneuver cannot be allowed to work. Jumping the gun does not turn an otherwise non-final action into an appealable order.

Laborers' Int'l Union, 365 F.3d at 578 (internal citations omitted).

Similarly here, S&S neither has renewed its TRO request nor moved the Bankruptcy Court for a preliminary injunction, even though the Opinion and Order expressly state that they deny the TRO Motion "without prejudice". Tellingly, S&S also has allowed the appeal period to lapse on the Bankruptcy Court's Reclamation Order, which of itself establishes procedures for the Bankruptcy Court's consideration of S&S's reclamation and other claims. S&S also does not address, for obvious reasons, the afore-

discussed Third Circuit authority[6] or even argue that the
Opinion effectively "dismissed" its claims.

In short, S&S's Motion should be denied because S&S
has not met its threshold burden to demonstrate that the
Bankruptcy Court's denial of its application for a TRO is
the type of order which is even a potentially appealable
interlocutory order under governing Third Circuit
authority.

## II.  S&S HAS WAIVED CERTAIN OF THE ISSUES IT SEEKS LEAVE TO APPEAL.

S&S argues that immediate appellate review is
appropriate because the Bankruptcy Court incorrectly
decided, *inter alia*, that (i) S&S was not entitled invoke
the doctrine of marshaling as against the Senior Lenders
and (ii) the Senior Lenders need not foreclose on the
Debtors' goods in order to protect their statutory rights.
See Motion p. 5, bulletpoints 2 and 3; id. ¶ 12
bulletpoints 2 and 3.  Not only do these arguments not
support an interlocutory appeal, but S&S is not permitted
to raise these issues even on an appeal of a final order.
Indeed, S&S expressly disclaimed that it was arguing in
favor of the doctrine of marshaling during the Bankruptcy
Court's consideration of S&S's TRO application, and S&S

---

[6] Indeed, S&S relies exclusively on case authority from outside
the Third Circuit.  See Motion ¶¶ 10-11.

failed to even advance the argument that the Senior Lenders must foreclose on the Debtors' goods in order to protect their statutory rights.

The law in the Third Circuit is clear and straightforward: a party cannot raise arguments on appeal that were not presented to the lower court. See In re Kaiser Group Int'l Inc., 399 F.3d 558, 565 (3d Cir. 2005) ("when a party fails to raise an issue in the bankruptcy court, the issue is waived and may not be considered by the district court on appeal."); Shell Petroleum, Inc. v. U.S., 182 F.3d 212, 219 (3d Cir. 1999) ("absent compelling circumstances an appellate court will not consider issues that are raised for the first time on appeal.") (internal quotation omitted); United Parcel Serv., Inc. v. Int'l Bhd. of Teamsters Local No. 430, 55 F.3d 138, 140 fn. 5 (3d Cir. 1995) ("issues raised for the first time at the appellate level will not be reviewed."). Here, the Court will search in vein for a single mention by S&S in its TRO Motion, its Reply Brief or even at oral argument that the Senior Lenders only may assert priority over reclamation claimants if they actually foreclose on the Debtors' goods. Having failed to raise the issue below, S&S may not assert it on appeal, interlocutory or otherwise.

S&S has even less of an ability to argue for marshaling on appeal. After failing to raise the issue in its TRO Motion, and ignoring that the Debtor raised it in its Answering Brief (pp. 19-20) by failing again to assert marshaling in its Reply Brief, S&S expressly renounced any argument about marshaling before the Bankruptcy Court at oral argument:

> The Court: **So you really want to impose marshaling here.** You want me to enter an injunction that will have the effect of requiring the secured creditor to satisfy its pre-petition liens out of other assts while preserving your assets in place.
>
> Mr. Wolfe: **I don't think that's the case. I don't think that's the case.**
>
> The Court: Well, even if they don't sell your stuff, they're going to continue to sell until they get six other TRO's from the other, from everybody else. But they're going to continue to sell product, and they're going to continue to roll up the debt.
>
> Mr. Wolfe: That may be the practical effectiveness, but **we're certainly not asking them to marshal.**

1/17/07 Tr. [Bk. Dkt. No. 240], p. 19 line 22 - p. 20 line 10 (emphasis added).[7]  Clearly, S&S's purported statement of

---

[7] It was not surprising that S&S chose to disclaim reliance on the remedy of marshaling at the TRO hearing. Indeed, it is black-letter law that an unsecured creditor such as S&S cannot invoke the doctrine of marshaling as against a secured creditor. See, e.g., In re Dairy Mart Convenience Stores, Inc., 302 B.R. 128, 134 (Bankr. S.D.N.Y. 2003); see also Opinion pp. 12-13. For this reason as well, then, S&S cannot demonstrate a substantial ground for difference of opinion with regard to its purported issues on appeal. See infra, Section IV(C).

issues on appeal directly contradict its own prior representations to the Bankruptcy Court and the parties.

The Third Circuit repeatedly has rejected attempts by appellants to present theories on appeal that are inconsistent with their theories in the court below, on grounds of fairness not only to the appellee but also to the trial court. See, e.g., Gardiner v. Virgin Islands Water & Power Auth., 145 F.3d 635, 647 (3d Cir. 1998) ("This claim, moreover, contradicts WAPA's main argument - that it had no contract with Gardiner. WAPA may have decided not to take such a position in the district court for fear that it would undermine WAPA's central claim. Under these circumstances, in the interest of fairness to the district court and to the plaintiff, not to mention the conservation of judicial resources, we will not consider this claim."); EF Operating Corp. v. Am. Bldgs., 993 F.2d 1046, 1049-1050 (3d Cir. 1993) ("counsel for EF Operating may [not] make this belated revelation on appeal, at oral argument no less, and thereby repudiate his earlier representations relied upon by the appellees, the district court and this court. . . . The smooth, efficient working of the judicial process depends heavily upon the assumption that such representations will be made after careful, deliberate evaluation by skilled attorneys who must

ultimately accept responsibility for the consequences of their decisions. It goes without saying that one cannot casually cas[t] aside representations, oral or written, in the course of litigation simply because it is convenient to do so"); Murray v. Silberstein, 882 F.2d 61, 65-66 (3d Cir. 1989) ("Murray's problem now is that he cannot be permitted to retreat from his original position that the Eleventh Amendment bars his claim for damages including back wages.").

S&S should not be permitted to ignore its own representations to the Bankruptcy Court and the parties in an attempt to create an issue that "sounds important" enough to warrant an immediate interlocutory appeal. For this reason as well, S&S's Motion should be denied.

## III. S&S BOTH IGNORES AND MISTATES THE BANKRUPTCY COURT'S OPINION.

S&S's Motion should be denied for the additional reason that two of the other issues S&S wants to press on appeal simply misstate the Bankruptcy Court's holdings. S&S argues that the Bankruptcy Court denied S&S's TRO Motion because the Bankruptcy Court determined that (i) S&S's reclamation claim was valueless and (ii) S&S's purported statutory reclamation right was compensable by money damages, thereby defeating S&S's argument for

irreparable harm.   See Motion p. 5 bulletpoints 1 and 4; id. ¶ 12 bulletpoint 1.   Simply stated, the Bankruptcy Court's Opinion makes no such findings or conclusions, so there is no sense in allowing appeal of these fictional holdings, now or ever.

First, the Bankruptcy Court did not conclude that S&S's reclamation claim is "valueless." Indeed, the word "valueless" is *not in the Opinion*.   See Opinion. Undoubtedly, this was no oversight, as whether or not reclamation claims have value primarily is used to determine whether reclamation claimants are entitled to an administrative expense claim, not whether they have a right to the specific performance of reclamation despite a secured lender's liens on the same inventory. See 1/17/07 Tr., p. 29 lines 21-25 (Mr. Silberglied: "On this TRO Motion, the Court does not have to rule on whether the reclamation claims are or are not valueless.   While interesting, the valueless issue only matters to the issue of whether ultimately an admin claim or some other remedy is going to be granted").

Instead, the Bankruptcy Court decided the issue actually before it: that S&S had not proved that it is likely to demonstrate that its reclamation right is superior to the Senior Lenders' pre-petition and post-

petition liens. See Opinion p. 10. The Court also noted that (i) the Senior Lenders' adequate protection liens attached to the Debtors' pre-petition collateral; (ii) the pre-petition Senior Facility was still in place as of the date of the Opinion; (iii) the Court's Interim DIP Order, entered after notice to S&S, provided interim priority to the Senior Lenders over S&S's reclamation claim; and (iv) the plain language of Section 546(c) and the persuasive weight of the pre-BAPCPA case authority did not weigh in favor of S&S's TRO Motion. See Opinion pp. 9-13. While these alternative holdings certainly are relevant to the "valueless" analysis, they do not, in themselves, constitute a holding on that separate issue.

Similarly, the Court did not conclude that S&S's purported statutory right to the return of the Goods was compensable by money damages, thereby defeating S&S's irreparable harm argument. Instead, the Court noted that "S&S has not met their burden of proving that they do in fact have any statutory rights". The Bankruptcy Court also found that each of S&S's other purported "harms" -- which involved *potential* credits, rebates, and other direct costs to S&S from supplying books to customers other than Debtors -- were compensable by money damages and therefore did not constitute irreparable harm. See Opinion pp. 13-16.

In summary, S&S's Motion misstates the Bankruptcy Court's Opinion and ignores the Bankruptcy Court's alternative bases for its decision. Since S&S cannot appeal holdings that do not in fact exist, the Motion should be denied. See In re Del. & Hudson Ry. Co., 96 B.R. 469, 473 (D. Del. 1989) (denying leave for interlocutory review where lower court's decision involved weighing of multiple considerations and movant's alleged appealable issue not supported by language of lower court's decision).

## IV.  S&S HAS NOT DEMONSTRATED THAT INTERLOCUTORY REVIEW IS EITHER JUSTIFIED OR APPROPRIATE.

### A.  Standards for Leave to Appeal.

Even if S&S had demonstrated that the Bankruptcy Court's denial of S&S's application for a TRO is a potentially appealable interlocutory order -- and it has not -- S&S bears a heavy burden to establish that interlocutory review is appropriate here. See In re Powell, 2006 WL 3208843, *3 (E.D.Pa. Nov. 3, 2006) (party seeking leave to appeal bears the burden to prove that the presumption against interlocutory review should not apply and that each of relevant factors weighs in favor of granting immediate interlocutory appeal).[8]

---

[8] None of the cases relied upon by S&S in its Motion granted a request for leave to appeal an interlocutory order. See IBI Sec. Serv., Inc. v. Nat'l Westminster Bank USA (In re IBI Sec. Serv., Inc.), 174 B.R. 664 (E.D.N.Y. 1994) (Motion ¶ 11) (denying motion for leave to

Leave to appeal should only be granted "sparingly" and where the movant has demonstrated "exceptional circumstances." See id., 2006 WL 3208843, *3 ("leave to file an interlocutory appeal should be granted sparingly."); In re Del. & Hudson Ry. Co., 96 B.R. at 473 ("A court shall entertain an appeal of an interlocutory judgment under § 1292(b) only where the appellant establishes exceptional circumstances").

Moreover, as the Court's Order is not a final order, S&S can appeal at this time only if this Court grants leave to hear the appeal pursuant to 28 U.S.C. § 158(a)(3) and Rule 8003 of the Federal Rules of Bankruptcy Procedure. Because Section 158(a) fails to provide criteria for determining when leave to appeal should be granted, courts faced with interlocutory appeals in a bankruptcy context have applied, by analogy, the standards set forth in 28 U.S.C. § 1292(b). See, e.g., In re Magic Rests., Inc., 202 B.R. 24, 26 (D. Del. 1996).[9]

---

appeal interlocutory order); Abel v. Shugrue (In re Ionosphere Clubs, Inc.), 179 B.R. 24 (S.D.N.Y. 1995) (Motion ¶ 10) (denying motion for leave to appeal interlocutory order); Capen Wholesale, Inc. v. Michel (In re Capen Wholesale, Inc.), 184 B.R. 547 (N.D. Ill. 1995) (Motion ¶ 11) (denying motion to dismiss fully-briefed appeal).

[9] The Third Circuit does not view interlocutory appeals with any flexible concept of finality. See In re Edison Bros. Stores, Inc., 1996 WL 363806, *3 (D. Del. June 27, 1996) (although "the concept of finality is accorded some measure of flexibility in the context of § 158(a)(1) appeals, . . . the same standard does not apply in the context of § 158(a)(3) interlocutory appeals.").

Under § 1292(b), "leave to file an interlocutory appeal can be granted when the order at issue (1) involves a controlling question of law upon which there is (2) substantial difference of opinion, and (3) when immediate appeal from the order may materially advance the ultimate termination of the litigation." Id.

Here, S&S's Motion should be denied because S&S has not demonstrated that each, or indeed any, of these three factors supports its request for leave to appeal or that exceptional circumstances underlie its Motion.

## B. S&S Has Not Demonstrated That Its Appeal Involves A Controlling Question of Law.

The Third Circuit has defined a "controlling question of law" as an "order which, if erroneous, would be reversible error on final appeal." Katz v. Carte Blanche Corp., 496 F.2d 747, 755 (3d Cir. 1974) (emphasis added); see also In re Del. & Hudson Ry. Co., 96 B.R. at 473 ("A 'controlling question of law' is one which would be reversible error on final appeal.") (emphasis added); Cardona v. Gen. Motors Div., 939 F. Supp. 351, 353 (D. N.J. 1996) ("A question is 'controlling' if its incorrect disposition would require reversal of the final judgment.") (emphasis added).

Without citing authority, S&S argues that it meets the controlling question of law prong of the interlocutory appeal test because there "is no case law" addressing the five issues set forth in its "Statement of Issues on Appeal" at page 5 of the Motion, and therefore "these issues are appropriate for appeal." See Motion ¶ 12. As noted above, however, the Third Circuit's standard is whether the relevant holding below would be reversible on final appeal, not whether there is an absence of existing case law.

The five issues identified by S&S clearly are not "controlling" in this sense because they are incapable of being reversed. The first four of the five either were not presented (and in one instance was actually disclaimed) by S&S below (see supra Section II) or present issues for appeal that simply are not what the Court below held. See supra Section III. Because these four issues are not properly appealable, they certainly cannot rise to the level of reversible error, and therefore do not meet the Third Circuit definition of "controlling questions of law". The remaining, fifth issue deals solely with balancing of harms, an issue that would not be reversible on final

<u>appeal</u> because it is only part of the test for a TRO, and is not an issue that would ever be considered at trial.[10]

Moreover, S&S's argument is inaccurate. There certainly is not an absence of existing case law regarding at least many of its five identified appellate issues. Indeed, the Bankruptcy Court's Opinion and the Debtor's Answering Brief both discussed the case and other authority which weighed against the Bankruptcy Court's grant of the TRO Motion. <u>See</u> Opinion pp. 8-16; Answering Brief pp. 9-31. Accordingly, whether the Court considers the facts or the law, S&S's argument fails.

S&S has not met the controlling question of law standard for the additional reason that nothing contained in the Bankruptcy Court's Opinion provides a basis for reversible error on <u>final</u> appeal since the holdings were all preliminary in nature. <u>See</u> <u>supra</u> Section I. On final appeal, therefore, only this Court's rulings at trial would be at issue. <u>See also Clark</u>, 979 F.2d at 969 (emphasis added) ("at that trial, because of the limited nature of the proceedings resulting in the preliminary injunction, any findings of fact and conclusions of law made at the

---

[10] S&S appears to understand this, as it does not argue that the balancing of the harms issue meets the "controlling law" prong. <u>See</u> Motion ¶ 12 (arguing that "the Order involves at least three critical and 'controlling questions of law'", and not listing the balancing of the harms argument among the three).

preliminary stage are of no binding effect whatsoever. Therefore, any holding we might reach would be based on information not entitled to deference at trial and would not finally determine the respective rights and liabilities of the parties."). Accordingly, for this reason as well, S&S has not demonstrated the existence of a controlling question of law.

S&S relies on Capen Wholesale, Inc. to argue that S&S need only demonstrate an "important" as opposed to "controlling" question of law. See Motion ¶ 11. S&S's reliance is misplaced because the Third Circuit does not follow the standard set forth in Capen Wholesale. See supra p. 26.[11] S&S cites IBI Sec. Serv. to argue that a "controlling" question of law is one which if reversed on appeal either (i) terminates the action or (ii) materially affects the outcome of the action. See Motion ¶ 11. S&S's reliance on IBI Sec. Serv., Inc. is similarly misplaced because it, too, applies a standard different than the one adopted by the Third Circuit. See supra p. 26.

---

[11] In any event, Capen Wholesale also is procedurally inapposite because the appellee did not initially contest the court's grant of interlocutory review, and instead first raised the issue after the parties had fully briefed the merits of the appeal. Capen Wholesale 184 B.R. at 548.

## C. S&S Has Not Demonstrated A Substantial Ground for Difference of Opinion.

S&S also has not demonstrated the second component of the interlocutory appeal test, a "substantial ground for difference of opinion." It is quite apparent that the Bankruptcy Court did not believe that there was a substantial ground for difference of opinion here. Indeed, it stated that "[t]his is a simple case." Opinion p. 16. Apparently S&S disagrees. However, it is well-settled that a "party's disagreement with the [trial] court's ruling does not constitute 'a substantial ground for a difference of opinion' within the meaning of 1292(b)." P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp., 161 F.Supp.2d 355, 360 (D. N.J. 2001); see also In re Powell, 2006 WL 3208843, *2 ("Mere disagreement with a ruling does not constitute a substantial ground for difference of opinion, as required under the second factor for interlocutory appeal.").

Here, S&S *only* argues that there is a substantial ground for difference of opinion because S&S *itself* disagrees with the Bankruptcy Court's decision. See Motion ¶¶ 13-15 (arguing only that S&S "respectfully" disagrees with the Bankruptcy Court's decision on a number of grounds). S&S's "respectful[]" disagreement with the Bankruptcy Court's ruling plainly is not sufficient to meet

its burden to demonstrate that other courts might have a substantial difference of opinion with respect to the Opinion's holdings.    See also In re Powell, 2006 WL 3208843, *3 (movant failed to establish a substantial ground for difference of opinion where movant failed to identify relevant case law which decided the issue differently).

Of course, even if some court had decided the underlying issues differently the "substantial ground for disagreement of opinion" standard is not necessarily met. Instead, the Court may critically weigh the case law to determine whether a substantial dispute exists.    See Trotter v. Perdue Farms, Inc., 168 F.Supp.2d 277, 288 (D. Del. 2001) (leave to appeal not granted where "the great weight of authority" supported the court's ruling); Cendant Corp., 161 F.Supp.2d at 360 ("the difference of opinion must arise out of genuine doubt as to the correct legal standard."); Neuner v. C.G. Capital Ventures-I, L.P. (In re Sharps Run Assocs.), 157 B.R. 766, 779 (D. N.J. 1993) ("It is the duty of the district judge . . . to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a substantial ground for dispute.") (citation omitted); Gen. Motors Div., 939 F. Supp. at 353

("the 'difference of opinion' must arise out of genuine doubt as to the correct legal standard."); In re Powell, 2006 WL 3208843, *2 ("a substantial ground for difference of opinion 'must arise out of genuine doubt as to the correct legal standard.'").

Although S&S did not attempt to demonstrate a substantial difference of opinion among courts, the Opinion itself did discuss the relevant legal authority and demonstrate that there are no "substantial" grounds for dispute. See Opinion pp. 8-16.

Moreover, the Bankruptcy Court based its Opinion in part on the "express language" of Section 546(c). See Opinion p. 16. Where the court relies on clear statutory language, S&S has not met its burden by simply disagreeing with the Bankruptcy Court's decision. See Singh v. Daimler-Benz, AG, 800 F.Supp. 260, 263 (E.D. Pa. 1992) (finding no substantial disagreement where "there is clear statutory language" supporting court's ruling).

S&S also appears to argue that interlocutory appeal is appropriate because there "is no case law" relevant to certain of its proposed issues on appeal. See Motion ¶ 12. As noted above, S&S's argument is inaccurate; most of the issues that S&S wants to raise on appeal, such as the inability of a reclamation creditor to invoke the

marshaling doctrine, are supported by ample authority cited in the Opinion itself and elsewhere.   In any event, S&S's premise that this matters for the purpose of this Motion simply is wrong.   A dearth of judicial opinion does not demonstrate a substantial disagreement in opinion.   See In re Magic Rests., Inc., 202 B.R. at 26 ("The Court concludes that a scarcity or void of judicial opinion alone is insufficient to justify an interlocutory appeal."); In re Powell, 2006 WL 3208843, *2 ("Nor is a void or absence of judicial opinion sufficient to satisfy this requirement.").[12]

### D.   S&S Has Not Demonstrated That Its Appeal Will Materially Advance the Ultimate Termination of the Litigation.

"To satisfy the third requirement of § 1292(b) a moving party must also demonstrate that interlocutory appeal will materially advance the termination of the litigation."   In re Powell, 2006 WL 3208843, *3.   Here, even if S&S's Motion were granted, neither the grant of

---

[12] To the extent that S&S argues that its issues on appeal present issues of first impression -- and they do not -- S&S would still not thereby satisfy its burden to demonstrate a substantial difference of opinion.   See In re Sharps Run Assocs., 157 B.R. at 779 n. 6 ("[T]he mere fact that the appeal would present a question of first impression is not, of itself, sufficient to show that the question is one on which there is a substantial ground for difference of opinion.") (citation omitted); 16 Wright & Miller, Federal Practice and Procedure § 3930 at 419-20 and n.12 (2d ed. 1996) (merely because an issue is one of first impression does not mean that the movant has demonstrated a substantial ground for difference of opinion).

appeal nor its eventual resolution will materially advance the termination of this adversary proceeding.

First, even if an appellate court were to determine that S&S had met its burden on its application for a TRO, any such decision would not obviate the Bankruptcy Court's role to decide the merits of S&S's reclamation claim in future proceedings, including trial. See United States v. Local 560, 974 F.2d 315, 330 (3d Cir. 1992) ("Sciarra is correct that a trial court, in deciding whether to grant permanent relief, is not bound by its decision *or the appellate court's decision* about preliminary relief.") (emphasis added). Indeed, if the District Court or the Third Circuit were to disagree with the Bankruptcy Court's ruling, the most likely result would be a remand for further proceedings on S&S's TRO application. Accordingly, if the Motion were granted, the progress of these proceedings to disposition on the merits would be delayed *both* pending *and* after any decision on appeal, rather than materially advanced or terminated.

Second, the appellate court would have to reverse on all of the multiple grounds in which the Bankruptcy Court held in the Debtor's favor for there to be any practical impact at all of a reversal. Thus, even the TRO Motion, let alone the ultimate fate of the Complaint, would be

unaffected if the Opinion is reversed only in part. Accordingly, an appeal now hardly would even advance resolution of the TRO Motion.

Third, no matter how the appellate court might rule on appeal, even S&S does not argue that any decision by the appellate court would actually terminate this adversary proceeding or finally resolve any of the separate claims stated by S&S in its Complaint. See Motion. Indeed, each of S&S's claims still would proceed to further disposition in this adversary proceeding, whether by additional injunctive proceeding, summary judgment or trial, notwithstanding any decision on appeal. Under these circumstances, S&S simply cannot meet its burden to prove that granting leave to appeal will materially advance the termination of this litigation. See Cendant Corp., 161 F.Supp.2d at 362 (denying leave to appeal where trial would still be necessary even if movant was successful); In re Powell, 2006 WL 3208843, *3 (denying request for interlocutory appeal where appeal would not "expedite the termination of the litigation.").

What really is driving this Motion is S&S's candid acknowledgement that, in effect, it hopes to obtain an advisory opinion on appeal regarding issues which the Bankruptcy Court may confront under the Reclamation Order.

35

See Motion ¶ 16 (arguing that appellate review is appropriate to provide guidance for the Bankruptcy Court with regard to future decisions under the Reclamation Order). The Court should deny S&S's Motion and not approve S&S's attempt to seek an advisory opinion from an appellate review. See, e.g., Callwood v. Questel, 883 F.2d 272, 275 (3d Cir. 1989) ("We also make no preliminary statement as to the government's legal argument, which the district court has not had the opportunity to address, . . . To render a decision in this regard would equate to rendering advisory opinion, a practice greatly disfavored by us.").

## E. S&S Has Not Demonstrated Exceptional Circumstances Sufficient to Justify Interlocutory Review.

Even if S&S had demonstrated that each of the foregoing factors favored immediate interlocutory review, the Court still should deny S&S's Motion because S&S has not demonstrated that there are exceptional circumstances which warrant its requested relief. S&S's Motion reflects nothing more than a disappointed litigant, striving to avoid a judicial determination with which it disagrees. These are not exceptional circumstances, they are ordinary circumstances, and certainly not circumstances sufficient to justify the grant of immediate interlocutory review. See In re Magic Rests., Inc., 202 B.R. at 26 ("a party

seeking leave to pursue an interlocutory appeal must demonstrate, in the context of the factors cited above, some circumstance or reason that distinguishes the case from the procedural norm and establishes the need for immediate review. . . . Although Magic asserts that determining this issue now would save time and avoid having to resolve other factual and legal matters, Magic has not sufficiently established an urgency that sets this case apart from the typical case.").

Moreover, S&S's request for interlocutory appeal does not present exceptional circumstances for the additional reason that interlocutory review will *not* satisfy S&S's stated purpose of obtaining actual reclamation and a TRO before its Goods are sold.  See Motion ¶ 1.  Indeed, S&S never sought a stay pending appeal, and thus the Debtor continues to sell S&S's Goods.  As S&S well knows, the Goods are being sold rapidly in the ordinary course of the Debtor's business; of the $5-$6 million of books S&S allegedly shipped during the reclamation period, only approximately $807,940 remained by the date of the TRO hearing, which was only 2 weeks after the Debtor's petition date.  See Smith Aff. ¶ 25.  With the almost 4 weeks that have passed *since* the TRO hearing, that number has now diminished to only approximately $440,000.  Even if an

appeal were to be expedited,[13] presumably an appellate opinion would not be issued for months, and if a remand were ordered, S&S would still have to go back to the Bankruptcy Court to obtain a TRO.  In other words, given the process followed by S&S, by the time that S&S actually obtained a TRO there likely would be nothing left to reclaim.

Thus, unlike moving for a preliminary injunction, the extraordinary mechanism of an interlocutory appeal would not even serve S&S's own alleged purpose, and thus cannot constitute extraordinary circumstances within the meaning of the case law on interlocutory appeals.

---

[13] There is no reason to believe that an expedited appeal would be sought.  Indeed, the record compels the opposite conclusion.  Despite the fact that it knew sales were being made, S&S waited until almost two weeks after the petition date even to seek a TRO.  Then, it never sought a stay pending appeal and it waited a week and a half after the Opinion was issued to file the Motion.  Moreover, it never attempted to set the Motion for any type of expedited hearing.

## CONCLUSION

For all of the foregoing reasons, the Debtor respectfully requests that the Court deny the Motion and award it such other and further relief as is just and proper.

Dated: February 12, 2007
       Wilmington, Delaware

_____
Mark D. Collins (No. 2981)
Russell C. Silberglied (No. 3462)
Paul N. Heath (No. 3704)
Marcos A. Ramos (No. 4450)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
Wilmington, Delaware  19899
(302) 651-7700

-and-

Suzzanne S. Uhland
Austin K. Barron
Alexandra B. Feldman
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California  94111
(415) 984-8700

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

# EXHIBIT A

Westlaw.

Not Reported in F.Supp.                                        Page 1

Not Reported in F.Supp., 1996 WL 363806 (D.Del.)
(Cite as: Not Reported in F.Supp.)

**H**

In re Edison Bros. Stores, Inc.D.Del.,1996.Only the Westlaw citation is currently available.

United States District Court, D. Delaware.

In re EDISON BROTHERS STORES, INC., et al., Debtors.

Jonathan VICTOR, Richard Polak, and Martin Katz, Appellants,

v.

EDISON BROTHERS STORES, INC., et al., Appellees.

No. CIV.A. 96-177-SLR.

June 27, 1996.

Laura Davis Jones, and Joel A. Waite, of Young, Conaway, Stargatt & Taylor, Wilmington, Delaware; and Harvey R. Miller, and Richard P. Krasnow, of Weil, Gotshal & Manges LLP, New York, New York, and D.J. Baker, of Weil, Gotshal & Manges LLP, Houston, Texas, for appellees/debtors.

Jeffrey C. Wisler, of Williams, Hershman & Wisler, of Wilmington, Delaware, and Peter D. Wolfson, Carole Neville, John A. Bicks, and Pamela Cohen, of Pryor, Cashman, Sherman & Flynn, New York, New York, for appellants.

Thomas L. Ambro, and Deborah E. Spivack, of Richards, Layton & Finger, Wilmington, Delaware, and David S. Kurtz, Timothy R. Pohl, and Sean D. Malloy, of Jones, Day, Reavis & Pogue, Chicago, Illinois, for the Official Committee of Unsecured Creditors of Edison Brothers Stores, Inc.

E. Gordon Robinson, and Susan R. Sherrill, of U.S. Securities and Exchange Commission, Atlanta Georgia, and Ellen W. Slights, Assistant United States Attorney, Wilmington, Delaware, for U.S. Securities and Exchange Commission.

*MEMORANDUM OPINION*

SUE L. ROBINSON, District Judge.

I. INTRODUCTION AND BACKGROUND

**\*1** Pending before the court is a motion filed by appellee, the Official Committee of Unsecured Creditors (hereinafter the "Creditors' Committee"), for an order dismissing the appeal of Joseph Harrosh, Jonathan Victor, Richard Polak and Martin Katz (hereinafter the "appellants"), all of whom are non-insider public shareholders of Edison Brothers, Inc. and 65 subsidiaries (hereinafter the "debtors") which filed chapter 11 petitions in this district's bankruptcy court in November 1995.[FN1] By letters dated November 9 and November 22, 1995, appellants wrote to the United States Trustee requesting that an official equity committee be appointed pursuant to 11 U.S.C. § 1102(a).[FN2] On December 7, 1995, the United States Trustee declined appellants' request.

> FN1. As of the Petition Date, approximately 22,000,000 shares of the debtors' common stock were outstanding. Those shares are widely held by more than 4,000 record holders, and a substantially larger number of beneficial holders.

> FN2. Section 1102(a) of the Bankruptcy Code provides in relevant part that:
> (1) As soon as practicable after the order for relief under chapter 11 of this title, the United States trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors or of equity security holders as the United States trustee deems appropriate.
> (2) On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The United States trustee shall appoint any such committee.
> (Emphasis added)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1996 WL 363806 (D.Del.)
(Cite as: Not Reported in F.Supp.)

Page 2

**\*1** On January 12, 1996, appellants filed a motion with the bankruptcy court requesting the appointment of an official committee of equity security holders. The California Public Employees Retirement System (holding approximately 150,000 shares of the debtors' common stock) and the Securities and Exchange Commission ("SEC") supported the motion. The debtors, the United States Trustee and the Creditors' Committee opposed the motion.

**\*1** Hearings on the motion were held by the bankruptcy court on February 29 and March 20, 1996. Appellants asserted to the court that (1) the debtors were not insolvent, (2) the debtors' public shares were widely held, (3) the debtors' chapter 11 cases were complex, and (4) insiders of the debtors could not adequately represent the interest of public shareholders in the chapter 11 cases for conflict of interest reasons. The opponents to the motion argued that the debtors' current and former management could and would provide adequate representation for the debtors' public shareholders, as a result of their ownership of approximately 35% of the debtors' outstanding common shares. The bankruptcy court declined to appoint an equity committee, stating during the course of the hearing the following, *inter alia*

**\*1** \* "I'm going to deny without prejudice obviously, because as this case progresses I think there may be an appropriate time for a committee of equity holders...."

**\*1** \* "[I]f somebody wants to come on with evidence to suggest that [the interests of insider shareholders are not aligned with those of non-insider shareholders,] I'd be glad to entertain it...."

**\*1** \* [I]f the petitioning shareholders reach a point where they think that additional facts need to be brought to my attention which would warrant a change of my position, then I would urge them to do so...."

**\*1** \* "I think that based upon a different posture six months from now [the request to appoint an equity committee] may be an appropriate application...."

**\*1** (D.I. 16, # 15 at 101, 103, 114, 114-115, respectively)

**\*1** Appellants thereafter filed a timely appeal to this court. In response to the appeal, the Creditors' Committee filed the pending motion to dismiss the appeal for want of subject matter jurisdiction.

## II. DISCUSSION

**\*2** As with many bankruptcy cases, it is a difficult task in the case at bar to divine legal principles when dealing with an equitable process revolving around a discretionary matter. Clearly the establishment of an official equity committee pursuant to 11 U.S.C. § 1102(a) is a discretionary matter, the resolution of which is fact-driven and, therefore, not amenable to any bright line tests. And while the bankruptcy court in this case has expressed its willingness to revisit its order if facts warrant, the court has conclusively determined that, on the present record, the appointment of an equity committee is not necessary to assure adequate representation of non-insider equity security holders.

**\*2** To establish that review of the bankruptcy court's decision is appropriate at the present time, appellants must show that the decision is either a final order, an interlocutory order appealable under 28 U.S.C. § 158(a)(3), or a collateral order.

### A. Final Orders

**\*2** This court has jurisdiction to hear appeals "from final judgments, orders, and decrees" of the bankruptcy court. 28 U.S.C. § 158(a)(1). Finality is viewed flexibly in the bankruptcy context. *See, e.g., In re Trans World Airlines, Inc*, 182 B.R. 102, 105 (D.Del.1995) ("In bankruptcy cases, the courts accord finality a somewhat 'flexible pragmatic definition' ") (*citing In re Columbia Gas System, Inc*, 146 B.R. 106, 110 (D.Del.1992), *aff'd*, 50 F.3d 233 (3d Cir.1995)); *In re Columbia Gas System, Inc*, 182 B.R. 397 (D.Del.1995); *In re Buckhead America Corp*, 180 B.R. 83, 84 (D.Del.1995). The Third Circuit has explained the rationale for viewing finality under a less rigorous standard in the bankruptcy area as follows:

**\*2** Bankruptcy cases frequently involve protracted proceedings with many parties participating. To

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1996 WL 363806 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

avoid the waste of time and resources that might result from reviewing discrete portions of the action only after a plan of reorganization is approved, courts have permitted appellate review of orders that in other contexts might be considered interlocutory.

**\*2** *In re Amatex Corp.*, 755 F.2d 1034, 1039 (3d Cir.1985). In the Third Circuit, courts typically look to a number of factors to determine if an order is a final order: 1) the impact of the bankruptcy court's order upon the assets of the bankruptcy estate; 2) the necessity for further fact-finding on remand to the bankruptcy court; 3) the preclusive effect of the district court's decision on the merits of subsequent litigation; and 4) the furtherance of judicial economy. *Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*, 920 F.2d 1127, 1131 (3d Cir.1990).

**\*2** Appellants do not offer specific arguments that the factors identified in *Allegheny* weigh in favor of finding finality under the circumstances at bar. Instead, appellants essentially argue the merits of the dispute, i.e., finality should be found (and the order reversed) so that "the debtors' thousands of public shareholders [will not be excluded] from effective participation in the reorganization process including the restructuring of the debtors' business operations, the formulation of the business plan, and the negotiation of a plan of reorganization." (D.I. 15 at 8) With none of the factors even arguably applying, however, and with the only case law directly on point holding contrary to appellants' position,[FN3] the court concludes that the order in dispute is not final for purposes of an appeal of right pursuant to 28 U.S.C. § 158(a)(1).

> FN3. The United States Court of Appeals for the Second Circuit held in *In re Johns-Manville Corp.*, 824 F.2d 176, 179-180 (2d Cir.1987) that "[o]rders denying shareholder requests for official committee status" are not final for purposes of appeal because they "do not resolve particular disputes within the overall bankruptcy case; they simply affect the committee structure within which

various disputes in the reorganization proceeding will be considered."

### B. Interlocutory Orders

**\*3** Section 158(a)(3) of Title 28 of the United States Code gives this court jurisdiction to hear appeals, with leave of court, from interlocutory orders and decrees. In deciding whether an interlocutory order is appealable in the bankruptcy context, courts have typically borrowed the standard found in 28 U.S.C. § 1292(b), which governs whether an appeal of an interlocutory order of a district court to a court of appeals is warranted. *In re Delaware and Hudson Ry. Co.*, 96 B.R. 469, 472-73 (D.Del.), *aff'd*, 884 F.2d 1383 (3d Cir.1989). Although the concept of finality is accorded some measure of flexibility in the context of § 158(a)(1) appeals, apparently the same standard does not apply in the context of § 158(a)(3) interlocutory appeals. Thus, an appellant must establish that "exceptional circumstances justify a departure from the basic policy of postponing review until after the entry of final judgment." *Id.* at 473. Also, under § 1292(b), an interlocutory appeal will be granted only when the order at issue (1) involves a controlling question of law as to which there is (2) substantial ground for difference of opinion and (3) when an immediate appeal from the order may materially advance the ultimate termination of the litigation. *Id.*

**\*3** The court declines to characterize the dispute at bar as presenting "exceptional circumstances" warranting leave to appeal under § 158(a)(3). Although one might arguably characterize the issue of when it is appropriate to establish an official equity committee as a "controlling question of law," nevertheless the court is not convinced that an immediate appeal in this case will materially advance the ultimate termination of the litigation (as opposed to materially advancing the rights of appellants, as they argue).

### C. Collateral Orders

**\*3** The final basis for appellate jurisdiction is the collateral order doctrine. In general, the collateral

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                      Page 4

Not Reported in F.Supp., 1996 WL 363806 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

order doctrine applies to the class of prejudgment orders which "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Richardson-Merrell, Inc v. Koller,* 472 U.S. 424, 430 (1985) (*quoting Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546 (1949)). For the collateral order doctrine to apply, an order must satisfy three conditions: 1) it must " conclusively determine the disputed question;" [FN4] 2) it must "resolve an important issue completely separate from the merits of the action;" and 3) it must "be effectively unreviewable on appeal from a final judgment." *Richardson-Merrell,* 472 U.S. at 431.

> FN4. Both in their opening and reply briefs, the Creditors' Committee focuses solely on this first condition that must be satisfied if the collateral order doctrine is to apply. The court nevertheless has reviewed the other two conditions.

**\*3** As noted above, the bankruptcy court has conclusively determined that, under the facts of record, it is not necessary to appoint an official equity committee to assure adequate representation in the reorganization process to non-insider equity shareholders.[FN5] The issue of whether non-insider public shareholders are adequately represented in the reorganization process is an important issue (as attested to by the interest in these proceedings by the Securities and Exchange Commission) completely separate from the merits of the reorganization. Finally, all parties to this dispute have acknowledged that, at some point in the proceedings, the opportunity to effectively participate in the reorganization will be lost, thereby mooting the question of official committee status. To decline review of this kind of order in the reorganization context will most certainly engage the court and the parties in a guessing game of when such an issue has been developed enough for review without being mooted by the passage of time.

> FN5. The use of the "without prejudice" language is not persuasive in this context, since a change of facts is generally grounds for revisiting a matter.

### III. CONCLUSION

**\*4** Although the court is cognizant of the long-standing Congressional policy against piecemeal appeals which underlies the final judgment rule, the court is satisfied that the issue of whether an equity committee should be appointed under the facts of record has been determined in such a fashion that appellate review is warranted under the collateral order doctrine without waiting for any further factual development. Therefore, the motion to dismiss filed by the Creditors' Committee is denied.

**\*4** An order shall issue.

D.Del.,1996.
In re Edison Bros. Stores, Inc.
Not Reported in F.Supp., 1996 WL 363806 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                    Page 1

Slip Copy, 2006 WL 3208843 (E.D.Pa.)
(Cite as: Slip Copy)

Briefs and Other Related Documents
In re Powell,E.D.Pa.,2006.Only the Westlaw citation
is currently available.
United States District Court,E.D. Pennsylvania.
In re Eric E. POWELL, Debtor.
Civil Action No. 06-4085.

Nov. 3, 2006.

David A. Scholl, Newtown Square, PA, for Debtor.

### ORDER AND MEMORANDUM
JAN E. DuBOIS, J.

### ORDER

*1 **AND NOW** this 2nd day of November, 2006,
upon consideration of the Motion for Leave to
Appeal Bankruptcy Court Order (Doc. No. 50, filed
August 31, 2006) and Plaintiff's Response to
Defendant's Motion for Leave to Appeal
Interlocutory Order (Doc. No. 57, filed September
6, 2006), for the reasons set forth in the attached
Memorandum, **IT IS ORDERED** that the Motion
for Leave to Appeal Bankruptcy Court Order is
**DENIED.**

### MEMORANDUM

### I. BACKGROUND

*1 On February 3, 2005, Chapter 13 debtor, Eric
Powell, filed a complaint in the Bankruptcy Court
for the Eastern District of Pennsylvania. Debtor
asked the Bankruptcy Court to quiet title to a
property located in Brooklyn, New York ("the New
York property") in debtor. According to the
Complaint, debtor's father ("father") and mother ("
mother") purchased the New York property in
1987. On April 29, 1998, father and mother

executed a Special Power of Attorney, authorizing
debtor to execute legal instruments on their behalf.
FN1 On March 22, 2001, father signed a trust
agreement, transferring title of the New York
property to defendant, Jay Best, as trustee, for the
benefit of Nina and Mendel Cohen, debtor's sister
and brother-in-law. In October of 2001, father died.
Father's will of November 28, 1995 named debtor
as sole heir.FN2 Father's will was admitted to
probate on July 25, 2003.

> FN1. Mother died in December of 1998.

> FN2. Debtor was named sole heir in the
> event that father's wife predeceased father.

*1 Debtor asked the Bankruptcy Court to invalidate
father's trust agreement on the ground that Nina and
Mendel Cohen fraudulently induced father to deed
the property to Best when father lacked the mental
and legal capacity to do so. Defendant, Best, moved
for summary judgment, alleging that debtor's claim
falls within the probate exception to federal
jurisdiction.

### II. THE DECISION OF THE BANKRUPTCY
COURT

*1 In *Marshall v. Marshall,* 126 S.Ct. 1735 (2006),
the Supreme Court revisited the probate exception,
which the Court characterized as a "narrow
exception" to federal jurisdiction. *Marshall,* 126
S.Ct. at 1744. Recognizing that "[l]ower federal
courts have puzzled" over the doctrine, the Supreme
Court explained:
*1 [T]he probate exception reserves to state probate
courts the probate or annulment of a will and the
administration of a decedent's estate; it also
precludes federal courts from endeavoring to
dispose of property that is in the custody of a state
probate court. But it does not bar federal courts
from adjudicating matters outside those confines

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 3208843 (E.D.Pa.)
**(Cite as: Slip Copy)**

and otherwise within federal jurisdiction.

**\*1** *Marshall*, 126 S.Ct. at 1748.

**\*1** Applying *Marshall* to this case, the Bankruptcy Court denied defendant's motion for summary judgment in a Memorandum and Order dated August 18, 2006. Bankruptcy Judge Jean K. Fitzsimon ruled that the Bankruptcy Court had jurisdiction to determine whether father's trust was valid for two reasons. First, Bankruptcy Judge Fitzsimon concluded that the disputed trust was an *inter vivos* trust, and not a will substitute. Second, Bankruptcy Judge Fitzsimon concluded that a judgment on the validity of the trust would not interfere with probate proceedings because the New York property was not part of father's estate.[FN3] As a final point, Bankruptcy Judge Fitzsimon concluded that state legislation, 20 Pa.C.S.A. § 711, did not divest the Bankruptcy Court of jurisdiction.

> FN3. *See Marshall*, 126 S.Ct. at 1749 (interpreting the bar on 'interference' with probate proceedings as "the general principle that, when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*") (quoting *Markahm v. Allen*, 326 U.S. 490 (1946)); *see also Abercrombie v. Andrew College*, 438 F.Supp.2d 243, 256 (S.D.N.Y.2006) (finding the probate exception inapplicable where claim did not require federal court to distribute assets of decedent's estate, but only to determine whether additional assets should be added to the estate).

**\*2** The question before this Court is whether to grant an interlocutory appeal of the decision of the Bankruptcy Court to deny the motion for summary judgment.

### *III. THE LEGAL STANDARD*

**\*2** Pursuant to 28 U.S.C. § 158(a), this Court has jurisdiction to hear appeals from orders of the Bankruptcy Court. Interlocutory appeals from

Bankruptcy Court decisions are permitted only with leave from this Court. 28 U.S.C. § 158(a)(3).

**\*2** Neither § 158 nor the Bankruptcy Rules provide criteria to determine whether to grant leave to file an interlocutory appeal. Courts faced with this question have applied 28 U.S.C. § 1292(b), which sets forth the requirements for interlocutory appeals from district courts to the courts of appeals. *See, e.g.*, *In re Sandenhill, Inc.*, 304 B.R. 692, 694 (E.D.Pa.2004); *In re Lavelle Aircraft Co.*, 1995 WL 334325, \*2 (E.D. Pa. June 2, 1995); *Sterling Supply Corp. v. Mullinax*, 154 B.R. 660, 662 (E.D.Pa.1993).

**\*2** Under § 1292(b), a court should grant leave to file an interlocutory appeal where three requirements are met: (1) the decision involves a controlling question of law; (2) there is a substantial ground for difference of opinion; and (3) immediate appeal may materially advance the ultimate termination of the litigation. *Sterling Supply Corp. v. Mullinax*, 154 B.R. 660, 662 (E.D.Pa.1993) (citing *In re School Asbestos Litigation*, 977 F.2d 764, 777 (3d Cir.1992)). Moreover, an interlocutory appeal is appropriate only in exceptional circumstances. *See, e.g.*, *Milbert v. Bison Laboratories, Inc.*, 260 F.2d 431, 433 (3d Cir.1958); *Johnson v. Columbia Casualty Co.*, 2006 WL 1805979, \*1 (E.D. Pa. June 29, 2006); *In re Resource America Securities Litigation*, 2000 WL 1053861, \*10 (E.D.Pa. July 26, 2000).

### *IV. DISCUSSION*

**\*2** With respect to the first factor, the Third Circuit has defined a 'controlling question of law' to ' encompass at the very least every order which, if erroneous, would be reversible error on final appeal.' " *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir.1974). Defendant clearly satisfies this requirement. If erroneous, the decision of the Bankruptcy Court to deny summary judgment would be reversible error. Nevertheless, the Court concludes that defendant does not satisfy the remaining requirements of § 1292(b).

**\*2** Mere disagreement with a ruling does not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 3

Slip Copy, 2006 WL 3208843 (E.D.Pa.)
**(Cite as: Slip Copy)**

constitute a substantial ground for difference of opinion, as required under the second factor for interlocutory appeal. *Cardona v. General Motors Corporation,* 939 F.Supp. 351, 353 (D.N.J.1996). Nor is a void or absence of judicial opinion sufficient to satisfy this requirement. *In re Magic Restaurants, Inc.,* 202 B.R. 24, 26 (D.Del 1996); *Max Daetwyler Corp. v. R. Meyer,* 575 F.Supp. 280, 283 (E.D.Pa.1983). Instead, a substantial ground for difference of opinion "must arise out of genuine doubt as to the correct legal standard." *P Schoenfeld Asset Management LLC v. Cendant Corp.,* 161 F.Supp.2d 355, 358 (D.N.J.2001); *Cardona,* 939 F.Supp. at 353.

**\*3** In this case, defendant agrees with the Bankruptcy Court that *Marshall* is the controlling authority. Moreover, defendant has not identified any case, post-*Marshall,* that suggests that a federal court may not determine whether an *inter vivos* trust is valid where the *res* of the trust is not part of a decedent's estate. The Court concludes, therefore, that defendant has not established a substantial ground for difference of opinion as required for interlocutory appeal.

**\*3** To satisfy the third requirement of § 1292(b) a moving party must also demonstrate that interlocutory appeal will materially advance the termination of the litigation. *Singh v. Dailmer-Benz,* 800 F.Supp. 260, 263 (E.D.Pa.1992). Defendant has not even attempted to persuade the Court of this point. On this issue the Court cannot conclude on the present state of the record that an interlocutory appeal will expedite the termination of the litigation. Thus, the Court concludes that defendant has not fulfilled this requirement.

**\*3** Finally, the Court recognizes that leave to file an interlocutory appeal should be granted sparingly. *See In re Magic Restaurants, Inc.,* 202 B.R. at 26-27 . Defendant has not established that the circumstances of this case are so extraordinary as to overcome the presumption against piecemeal litigation.

### V. CONCLUSION

**\*3** Defendant has not established that there is substantial ground for difference of opinion, or that immediate appeal will advance this litigation. Nor has defendant demonstrated exceptional circumstances that warrant interlocutory appeal. Accordingly, the Court denies the Motion for Leave to Appeal Bankruptcy Court Order pursuant to 28 U.S.C. §§ 158(a)(3) and 1292(b).

E.D.Pa.,2006.
In re Powell
Slip Copy, 2006 WL 3208843 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:06cv04085 (Docket) (Sep. 13, 2006)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works