## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ADVANCED MARKETING SERVICES, INC., a Delaware corporation, *et al.*, | Case No. 06-11480 (CSS) |
| | Joint Administration |
| Debtors. | |
| SIMON & SCHUSTER, INC., | |
| Plaintiff, | Adv. Pro. No. 07-50004 (CSS) |
| v. | |
| ADVANCED MARKETING SERVICES, INC., | Re: Adv. D.I. Nos. 27, 29 and 30 |
| Defendant. | |

## WELLS FARGO FOOTHILL, INC.'S ANSWERING BRIEF IN OPPOSITION TO SIMON & SCHUSTER, INC.'S MOTION FOR LEAVE TO APPEAL

Dated: February 12, 2007
      Wilmington, Delaware

Kurt F. Gwynne (No. 3951)
REED SMITH LLP
1201 Market Street, Suite 1500
Wilmington, DE 19899
Telephone: (302) 778-7500
Facsimile: (302) 778-7575
E-mail: kgwynne@reedsmith.com

-and-

Paul S. Arrow, Esquire
BUCHALTER NEMER
1000 Wilshire Blvd., 15th Floor
Los Angeles, CA 90017
Telephone: (213) 891-0700
Facsimile (213) 896-0400
Email: parrow@buchalter.com

Counsel for Wells Fargo Foothill, Inc.

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ..................................... 1

II.  NATURE AND STAGE OF THE PROCEEDINGS ............................................ 3

III.  STATEMENT OF THE FACTS ..................................................................... 4

IV.  ARGUMENT ................................................................................................. 7

  A.  Only Exceptional Circumstances Justify An Interlocutory Appeal ........................ 7

  B.  Simon Has Not Met Its Burden Of Proof Justifying An Interlocutory Appeal. ..... 8

    1.  Simon Did Not Demonstrate That The Order Involves Controlling Question Of Law ...................................................................................... 8

    2.  Simon Did Not Demonstrate That Any Questions Of Law Involve Substantial Grounds For Difference Of Opinion ............................................ 10

    3.  Simon Did Not Demonstrate That An Immediate Appeal Will Materially Advance The Termination Of Litigation ......................................... 14

V.  CONCLUSION ............................................................................................ 16

# TABLE OF AUTHORITIES

**Page**

## CASES

Coopers & Lybrand v. Livesay,
    437 U.S. 463 (1978)................................................................7

Dal-Tile, Inc. v. Color Tile, Inc. (In re Color Tile),
    203 B.R. 554 (D. Del 1996).....................................................7

Dynegy Mktg. and Trade v. Enron Corp. (In re Enron Corp),
    316 B.R. 767 (S.D.N.Y. 2004)................................................8

F.D.I.C. v. First Nat'l Bank Of Waukesha, Wisconsin,
    604 F.Supp. 616 (E.D. WI. 1985) ....................................7, 10

Galey & Lord, Inc. v. Arley Corp. (In re Arlco Inc.),
    239 B.R. 261 (Bankr. S.D.N.Y. 1999) ..................................12

In re Dairy Mart Convenience Stores, Inc.,
    302 B.R. 128 (Bankr. S.D.N.Y. 2003) ..................................14

In re Gibson Group, Inc.,
    151 B.R. 133 (Bankr. S.D. Ohio 1993)..................................13

In re Pittsburgh-Canfield Corp.,
    305 B.R. 688 (Bankr. N.D. Ohio 2003) .........................12, 14

In re Quality Stores, Inc.,
    289 B.R. 324 (Bankr. W.D. Mich. 2003)...............................12

Michael v. Marlin (In re Marlin),
    333 B.R. 14 (W.D.N.Y. 2005) ..............................................10

Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer
Pharms. Co., Inc.,
    290 F.3d 578 (3d Cir. 2002)....................................................9

Simon & Schuster, Inc. v. Advanced Mktg. Services, Inc. (In re Advanced
Mktg. Services, Inc.),
    2007 Bankr. LEXIS 135 ..........................................................6

U.S. Ex Rel. Alan Roy Hollander v. William Clay,
    420 F.Supp. 853 (D.D.C. 1976).............................................10

*Yenkin-Majestic Paint Corp. v. Wheeling-Pittsburgh Steel Corp. (In re Pittsburgh-Canfield Corp.),*
      309 B.R. 277 (B.A.P. 6th Cir. 2004) ....................................................................14

## FEDERAL STATUTES

11 U.S.C. § 101.....................................................................................................................3

11 U.S.C. § 105.....................................................................................................................8

11 U.S.C. § 362.....................................................................................................................8

11 U.S.C. § 546.....................................................................................................................3

28 U.S.C. § 158.....................................................................................................................7

28 U.S.C. § 1292...................................................................................................................7

Wells Fargo Foothill, Inc. ("Foothill") submits this Answering Brief in Opposition (the "Opposition") to the Motion For Leave To Appeal (the "Motion") filed by Simon & Schuster ("Simon") in connection with the bankruptcy cases of the above-captioned debtors (the "Debtors").[1]

## I.
## INTRODUCTION AND SUMMARY OF ARGUMENT

Despite the fact that an intervening order of the Bankruptcy Court has mooted its quest for a temporary restraining order, Simon soldiers on, seeking to appeal the denial of its injunction. Yet, interlocutory appeals are the exception rather than the rule, and are only justified in exceptional circumstances. Simon did not come close to meeting its burden of proving that exceptional circumstances exist. For the reasons discussed in detail below, the Motion should be denied.

No Controlling Questions Of Law. Simon argues that the Bankruptcy Court's ruling that Foothill's interests were superior to its reclamation rights involves controlling questions of law. Simon is wrong because the ruling was based on several independent grounds, only one of which implicated the issues Simon argues are controlling. Even absent the questions of law Simon argues are controlling, the TRO still would have been denied because Simon failed to demonstrate the other elements necessary to obtain injunctive relief. Since there were alternate bases for the Order, Simon's alleged controlling issues of law simply were not controlling.

No Substantial Ground For Difference Of Opinion. To begin with, the fact that there are no cases addressing an issue does not mean that there are substantial grounds for

---

[1]     Foothill also hereby joins in Debtors' Opposition to the Motion.

difference of opinion. Likewise, Simon's disagreement with the Bankruptcy Court's ruling does not establish the element. Moreover, analysis of Simon's three purported issues of law reveals no substantial grounds for difference of opinion. The "valueless" issue is no issue at all because it does not accurately reflect the Bankruptcy Court's ruling. The "marshaling" issue is simply not subject to serious debate – that an unsecured creditor has no right to marshal is virtually black-letter law. Finally, the "mere existence of a lien" issue does not involve a substantial difference of opinion because the reclamation cases are uniform in finding that while the mere presence of a superior lien does not extinguish a reclamation claimant's rights, it is sufficient to defeat a right to possession or administrative claim.

> <u>Immediate Appeal Will Not Materially Advance The Termination Of Litigation.</u>
First, as mentioned above, since the Order was based on several independent grounds, reversal of Simon's purported issues on appeal will not result in a different ruling on Simon's TRO application – it will still be denied.

Second, Simon seemingly forgot the context in which it raised the issues: an application for a temporary restraining order seeking only to preserve the status quo pending an ultimate determination of the issues. In determining whether to grant or deny the TRO, the Bankruptcy Court was called upon *only to determine the likelihood of success on the merits*. The ultimate resolution of those issues is, by definition, left for another day. Reversal of the Bankruptcy Court's decision denying the TRO would, in the best case scenario for Simon, result only in the Bankruptcy Court finding that there is a *likelihood* of success on the merits. The process of making the ultimate determination would be unaffected.

Third, the litigation will not be materially advanced by an immediate appeal because it is essentially mooted and superseded by an intervening order of the Bankruptcy Court establishing procedures for the validation and treatment of reclamation claims.

## II.
## NATURE AND STAGE OF THE PROCEEDINGS

On December 29, 2006 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). On the Petition Date, Simon & Schuster ("Simon") sent a reclamation demand to the Debtor. On January 5, 2007, Simon filed the Complaint for Reclamation of Goods Pursuant to 11 U.S.C. § 546(c) and Related Relief (D.I. 1) (the "Complaint"), commencing the above-captioned adversary proceeding against the Debtor.

On January 11, 2007, Simon filed its Emergency Application of Simon & Schuster for Temporary Restraining Order Pursuant to Bankruptcy Rule 7065 (D.I. 8) (the "TRO Application"). On January 12, the Debtors filed a preliminary objection to the TRO Application (D.I. 11). On January 17, 2007, Foothill and the Debtors each filed separate Answering Briefs in Opposition to Simon's TRO Application (D.I. Nos. 16 and 17), to which Simon filed a Reply Brief in further support of its TRO Application (D.I. 19). Also on January 17, 2007, the Bankruptcy Court conducted a hearing on the TRO Application.

On January 22, 2007, the Bankruptcy Court issued its Opinion and Order denying Simon's TRO Application (D.I. Nos. 23 and 24). On February 1, 2007, Simon filed a Notice of Appeal (D.I. 27), the Motion (D.I. 29) and a Request for Certification for Direct

3

Appeal to Circuit Court of Appeals (D.I. 30).   This is Foothill's Opposition to the
Motion.

### III.
### STATEMENT OF THE FACTS

Prior to the Petition Date, the Debtors and Foothill (as agent and lender), along
with other lender parties (collectively, the "Lenders"), were parties to that certain Loan
and Security Agreement dated as of April 27, 2004 (the "Prepetition Loan Agreement").
In order to ensure repayment of the obligations under the Prepetition Loan Agreement,
the Debtors granted Lenders a security interests in substantially all of their assets (the
"Prepetition Liens"), including without limitation the Debtors' inventory.   The
Prepetition Liens are valid, perfected and fully enforceable.

On January 3, 2007 the Court entered its Interim Order (the "Interim Order")
approving that certain Amended and Restated Loan and Security Agreement dated as of
January 3, 2007 (the "DIP Loan Agreement") between Debtors and the same parties that
comprise the prepetition Lenders.  In order to ensure repayment of the obligations under
the DIP Loan Agreement, the Debtors granted Lenders security interests in substantially
all of their assets, including their pre and post petition assets.   In addition, pursuant to the
Interim Order, the Lenders were granted adequate protection liens in all collateral (both
prepetition and postpetition) in order to protect them against any diminution in the value
of their collateral.

On the Petition Date, Simon sent its demand for reclamation of goods delivered to
the Debtors during the previous 45 days (the "Goods"), pursuant to Bankruptcy Code
section 546(c).  On January 5, 2007 Simon filed its Complaint seeking, among other
things, return of the Goods.  On January 11, nearly two weeks after its initial demand,

Simon filed its TRO Application.  Through the TRO Application, Simon sought an order of the Bankruptcy Court:

        1.    Prohibiting Debtors from selling the goods until further order of the Court;

        2.    Requiring Debtors to segregate the Goods from other inventory;

        3.    Requiring Debtors to provide and accounting of their disposition of the Goods; and

        4.    Requiring Debtors to permit Simon to inspect the Goods in its possession.

On January 17, 2007, Foothill filed its Answering Brief in Opposition to the TRO Application (the "Foothill TRO Opposition").  In the Foothill TRO Opposition, Foothill argued, among other things, that the TRO Application should be denied because its interests in the Goods as a secured creditor were senior to Simon's rights in the Goods. Also on January 17, 2007, Debtors filed their Opposition to the TRO Application (the "Debtors' TRO Opposition").  In the Debtors' TRO Opposition, the Debtors also argued that the TRO Application should be denied because of the superiority of Foothill's interests, and also because Simon met none of the other elements necessary for the issuance of injunctive relief.

Following a hearing on the TRO Application on January 17, 2007, the Bankruptcy Court issued its Order denying the TRO Application on January 22, 2007 (the "Order"). Along with the Order, the Bankruptcy Court issued its Opinion, constituting its findings of fact and conclusions of law in denying the TRO Application (the "Opinion").[2]  As set

---

[2]     The Opinion is reported at *Simon & Schuster, Inc. v. Advanced Mktg. Services, Inc. (In re Advanced Mktg., Services, Inc.)*, 2007 Bankr. LEXIS 135.

forth in the Opinion, denial of the TRO Application was based on several independent grounds:

      1.    Simon was not likely to prevail on the merits of its claim because Foothill's interests in the Goods were superior to Simon's reclamation rights;

      2.    Simon failed to meet its burden of proving that it would suffer irreparable harm if the TRO Application was denied; and

      3.    Simon failed to meet its burden of proving that the balance of the equities supported an injunction.

In the meantime, Debtors filed their motion establish procedures for addressing reclamation claims like that of Simon (the "Reclamation Procedures Motion"). Through the Reclamation Procedures Motion, Debtors sought a procedure permitting them to dispose of goods allegedly subject to reclamation while at the same time, preserving the rights of reclamation creditors. On January 24, 2007, the Bankruptcy Court entered its Order granting the Reclamation Procedures Motion (the "Reclamation Procedures Order"). In short, the Reclamation Procedures Order authorizes a procedure for validating reclamation claims and for the appropriate treatment of validated claims. Significantly, the Reclamation Procedures Order provides that reclamation claimants need not commence adversary proceedings to preserve their rights, and that the disposition of goods allegedly subject to reclamation will not eliminate their rights.

Despite that entry of the Reclamation Procedures Order mooted the reason behind the TRO Application (the need to preserve its ability to reclaim the Goods) Simon nonetheless seeks to appeal the Order.

## IV.
## ARGUMENT

### A.    Only Exceptional Circumstances Justify An Interlocutory Appeal.

The jurisdiction for appeals from a bankruptcy court is set forth in 28 U.S.C.

§ 158(a). Yet, as the District Court noted in *Dal-Tile, Inc. v. Color Tile, Inc. (In re Color*

*Tile)*, 203 B.R. 554 (D. Del 1996), "because [28 U.S.C. § 158(a)] does not provide

criteria for determining when leave to appeal should be granted, this court has held that

the standards set forth in 28 U.S.C. § 1292(b) governing interlocutory appeals from

district courts to United States Courts of Appeal should apply." *Id.* at 557 (citations

omitted). Moreover, "under section 1292(b) an interlocutory appeal may be had when

the order at issue (1) involves a controlling question of law upon which there is (2)

substantial grounds for difference of opinion and (3) when an immediate appeal from the

order may materially advance the ultimate termination of the litigation." *Id.*

"Additionally, a court will entertain an appeal under section 1292(b) only when

an appellant demonstrates that 'exceptional circumstances justify departure from the

basic policy of postponing appellate review until after the entry of a final judgment.'" *Id.*

(quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)); *see also F.D.I.C. v.*

*First Nat'l Bank Of Waukesha, Wisconsin*, 604 F.Supp. 616 (E.D. WI. 1985) ("The statue

is to be invoked only in exceptional circumstances where a decision on appeal may

obviate the need for protracted and expensive litigation and, accordingly, should not be

used indiscriminately in ordinary litigation.").

As demonstrated below, Simon does not come close to showing the exceptional

circumstances required for an interlocutory appeal.

**B.      Simon Has Not Met Its Burden Of Proof Justifying An Interlocutory Appeal.**

       1.      Simon Did Not Demonstrate That The Order Involves Controlling Questions Of Law.

Simon argues that the Bankruptcy Court's ruling that Simon was not likely to succeed on the merits of its claim because Foothill's interests were superior to its reclamation rights involves controlling questions of law. Simon is wrong because the Order was based on several independent grounds, only one of which implicated the issues Simon argues are controlling.

"A question of law is controlling if reversal of the [lower] court's order would terminate the action." *Dynegy Marketing and Trade v. Enron Corp. (In re Enron Corp)*, 316 B.R. 767, 772 (S.D.N.Y. 2004). Moreover, ". . . an interlocutory appeal of a bankruptcy court order [does] not raise a controlling question of law *[where] there may have been an alternate legal basis for the order*." *Id.* (emphasis added). In *Enron*, the putative appellant sought to appeal an order granting relief from the automatic stay. The district court found that while the order was grounded on Bankruptcy Code section 362, the bankruptcy court declined to decide whether the order could have been independently grounded on its equitable powers under Bankruptcy Code section 105(a). The district court concluded that "if this court were to reverse the stay order, the bankruptcy judge would be required to consider the alternative basis for it. The appeal of the stay order therefore does not involve a controlling issue of law." *Id.*

Here, not only *could* the Bankruptcy Court have based the Order on alternative grounds, *it in fact did so*. As the court noted,

     In order to grant a temporary restraining order the court must be convinced that the following factors favor granting relief: (1) the likelihood that the

> moving party will succeed on the merits; (2) the extent to which the
> moving party will suffer irreparable harm without injunctive relief; (3) the
> extent to which the nonmoving party will suffer irreparable harm if the
> injunction is issued; and (4) the public interest.

*Advanced Marketing* at 9 (quoting *Novartis Consumer Health, Inc. v. Johnson &*
*Johnson-Merck Consumer Pharms. Co., Inc.*, 290 F.3d 578, 586 (3d Cir. 2002)).  In
addition to finding that Simon failed to show the likelihood of success on the merits, the
Bankruptcy Court grounded the Opinion and Order independently on Simon's failure to
demonstrate the other elements required for injunctive relief: "therefore, because [Simon]
has failed to establish the existence of any irreparable harm, this factor weighs against
granting the TRO Motion." *Advanced Marketing* at 15.  Moreover, "because [Simon] has
the burden to establish that the balance of equities is in favor of granting the TRO
Motion, however, the balancing of the equities weighs against granting the TRO
Motion." *Id.*

In short, even absent the questions of law Simon argues are controlling, the TRO
Application still would have been denied because Simon failed to demonstrate the other
elements necessary to obtain injunctive relief.  Since there were alternate bases for the
Order, Simon's alleged controlling issues of law simply were not controlling.

2.    Simon Did Not Demonstrate That Any Questions Of Law Involve
Substantial Grounds For Difference Of Opinion.

Even if the Order did implicate controlling issues of law, Simon did not

demonstrate substantial grounds for difference of opinion on those issues.  In fact, Simon

merely complains that it disagrees with the Bankruptcy Court's decision, and alleges that

there is no case law interpreting the controlling statute.  That hardly suffices to meet

Simon's burden.

To begin with, the fact that there are no cases addressing an issue does not mean

that there are substantial grounds for difference of opinion.  *See F.D.I.C.*, 604 F.Supp at

620 (". . . § 1292(b) was not intended merely to provide an avenue for review of difficult

rulings in hard cases, and the mere fact that there is a lack of authority on a disputed issue

does not necessarily establish some substantial ground for a difference of opinion under

the statute."); *U.S. Ex Rel. Alan Roy Hollander v. William Clay*, 420 F.Supp. 853 (D.D.C.

1976) ("The fact that there are no cases interpreting [the subject statute] as applicable to

this case does not necessarily create substantial grounds for difference of opinion.").

Moreover, Simon's disagreement with the Bankruptcy Court's ruling does not

establish the element.  As the district court recently noted in *Michael v. Marlin (In re

Marlin)*, 333 B.R. 14 (W.D.N.Y. 2005): "In order to merit certification [an issue] must

involve more than a strong disagreement between adversary parties . . . ." *Id.* at 17.  The

*Marlin* court went on to flesh out the contours of the element.  Substantial grounds for

difference may exist, for example "where the issue is difficult and of first impression."

*Id.* (Citation omitted).  "However, the mere fact that a disputed issue is a question of legal

impression is insufficient to demonstrate a substantial ground for difference of opinion."

*Id.* at 18 (Citation omitted).  "Ultimately, it is the duty of the district court judge faced

10

with a motion for certification to analyze the strength of the arguments in opposition to

the challenged ruling when deciding whether the issue for appeal is truly one on which

there is *substantial* ground for dispute. *Id.* (Citation omitted) (emphasis in original).

Analysis of Simon's three purported issues reveals no substantial grounds for

difference of opinion.

a.    The Valueless Issue

Simon's first purported issue is:

Should amended section 546(c) of the Bankruptcy Code,
which added the words "subject to the prior rights of a
holder of a security interest in such goods or proceeds
thereof" be construed to mean that the existence of an
unpaid balance on the pre-petition secured indebtedness,
and the interim approval of the transfer of the pre-petition
liens to secure the post-petition borrowings, *renders
valueless all reclamation claims rather than that
reclamation claimants have an interest in the Goods or the
proceeds thereof as of the date of the Reclamation Demand
that is junior to the Lenders' interest in the Goods?*

Motion, p. 6-7 (emphasis added).

There is no substantial difference of opinion on this issue for the simple reason

that it does not accurately reflect the Bankruptcy Court's ruling. Despite Foothill's

arguments, the court did not rule that Simon's reclamation rights were *valueless*. Instead,

the court stopped short of that, ruling only that Simon's reclamation rights were *junior to

Foothill's interest in the Goods,* and therefore, that Simon was not entitled to reclaim the

Goods. Any determination of whether Simon's reclamation claim is valueless (as

opposed to merely subordinate) can, and likely will, be made in connection with the

reclamation procedures put in place through the Reclamation Procedures Order. Under

those procedures, the validity of Simon's reclamation claim will be tested, and the

Debtors will propose appropriate treatment of the claim.  Thus, Simon's purported

"valueless" issue is not even an issue, let alone one about which there is substantial

difference of opinion.

>               b.      The Marshaling Issue
>
>                       Simon's second purported issue is:
>
>                       Is the interest in goods held by a holder of a right of
>                       reclamation under the amended section 546(c) sufficient to
>                       require a senior secured creditor to marshal collateral?

Motion, p. 7.  In addressing this issue, the Bankruptcy Court stated that:

> At the end of the day [Simon] is doing little more than urging the Court to
> apply the doctrine of marshaling.  However, "unsecured creditors cannot
> invoke the equitable doctrine of marshaling." *Pittsburgh Canfield Corp.*,
> 309 B.R. at 291.  Moreover, the [prepetition and postpetition] loan
> agreements specifically provide that the lenders have no duty to marshal.

*Advanced Marketing* at 13.

The Bankruptcy Court was on bedrock ground in its statement of the virtually

black-letter law that a reclamation creditor, as an unsecured creditor, cannot force

marshaling.  *See In re Pittsburgh-Canfield Corp.* 305 B.R. 688, 693 (Bankr. N.D. Ohio

2003), (reclaiming creditors have "no right to invoke the equitable doctrine of

marshaling, because each of the Vendors is unsecured as to its reclamation claim"), *aff'd*,

309 B.R. 277 (B.A.P. 6th Cir. 2004); *Galey & Lord, Inc. v. Arley Corp. (In re Arlco Inc.)*,

239 B.R. 261, 273 and 267-68 (Bankr. S.D.N.Y. 1999) (marshaling was inappropriate

because the reclaiming seller was not a secured creditor and, therefore, was not entitled to

marshaling); *In re Quality Stores, Inc.*, 289 B.R. 324, 340 (Bankr. W.D. Mich. 2003)

(reclamation creditors' marshaling argument would be "futile").  While junior secured

creditors sometimes have the right to require the marshaling of collateral under applicable

law, courts have "denie[d] unsecured creditors standing to invoke the doctrine of

marshaling." *In re Gibson Group, Inc.*, 151 B.R. 133, 134-35 (Bankr. S.D. Ohio 1993).

Whatever substantive changes (if any) may be embodied in amended section 546(c),

there is nothing to change the fact that a reclamation claimant is, and always will be, an

unsecured creditor.

Moreover, whether Simon could otherwise require Foothill to marshal is

irrelevant. As noted by the Bankruptcy Court, the DIP Loan Agreement, approved by the

Bankruptcy Court through the Interim Order, provides that Foothill has no duty to

marshal its collateral. Thus, Simon's marshaling issue is not only one with respect to

which there is no substantial difference of opinion, it is also irrelevant.

     c.    The Mere Existence Of Lien Issue

Simon's third purported issue is:

> If marshaling is not available, is it enough for a secured
> creditor merely to assert the existence of a lien but continue
> to allow a debtor to use and convert the collateral, or must
> the secured creditor affirmatively exercise its lien rights
> and foreclose on the goods in order to defeat a right of
> reclamation.

Motion, p. 7.

To begin with, again, Simon offers no authority whatsoever to support its

assertion that there is any issue here at all, let alone one with respect to which there is

substantial difference of opinion. Thus, it did not meet its burden on this element.

Moreover, the reclamation cases are uniform in their determination that while the mere

presence of a superior lien does not extinguish a reclamation claimant's rights, it is

sufficient to defeat a right to possession or administrative claim.[3]  *See, e.g., Yenkin-Majestic Paint Corp. v. Wheeling-Pittsburgh Steel Corp. (In re Pittsburgh-Canfield Corp.)*, 309 B.R. 277, 291-92 (B.A.P. 6th Cir. 2004) (mere presence of superior lien defeated reclamation claimants assertion of an administrative claim on account of its reclamation rights.); *Arlco*, 239 B.R. at 273 (mere presence of superior lien defeated reclamation claimant's right to possession); *In re Dairy Mart Convenience Stores, Inc.*, 302 B.R. 128 (Bankr. S.D.N.Y. 2003) (Mere presence of superior lien defeated reclamation rights).

        3.    <u>Simon Did Not Demonstrate That An Immediate Appeal Will</u>
              <u>Materially Advance The Termination Of Litigation.</u>

An immediate appeal of the Order will not materially advance the litigation for at least three reasons.  First, as mentioned above, since the Order was based on several independent grounds, reversal of Simon's purported issues on appeal will not result in a different ruling on the TRO Application – it will still be denied.

Second, in arguing that an immediate appeal will advance the litigation, Simon seemingly forgot the context in which it raised the issues: an application for a temporary restraining order seeking only to preserve the status quo pending an ultimate determination of the issues.  As discussed above, in deciding whether to grant or deny the TRO, the Bankruptcy Court was called upon *only to determine the likelihood of success on the merits*.  The ultimate resolution of those issues is, by definition, left for another day.  Reversal of the Bankruptcy Court's decision denying the TRO would, in the best

---

[3]      The fact that the cited cases were decided under the previous version of Bankruptcy Code section 546(c) is irrelevant to this issue.  Whether the superiority of a lien is based on state law (as with the previous version of the statute) or embedded directly in the statue (as it is in the current version), makes no difference to the determination that mere presence of the superior lien defeats a reclamation creditor's rights.

case scenario for Simon, result only in the Bankruptcy Court finding that there is a *likelihood* of success on the merits. The process of making the ultimate determination would be unaffected. Thus, an immediate appeal of the Order would not advance resolution of the litigation at all, let alone do so materially.

Third, the litigation will not be materially advanced by an immediate appeal because it is essentially mooted and superseded by the Reclamation Procedures Order. The situation is very similar to that in *Color Tile,* 203 B.R. 554, where, after receiving a number of reclamation demands seeking the return of goods, the debtor filed a motion to deny physical reclamation of the goods and to establish procedures for the allowance and treatment of reclamation claims. The court granted the motion and one of the reclamation claimants, Dal-Tile, appealed the court's interlocutory order. The district court noted that an immediate appeal from the order would not materially advance the litigation because the issues presented in the appeal might be mooted by a later decision of the bankruptcy court, and because fact finding with respect to the value and validity of Dal-Tile's claim would be necessary regardless of a decision on appeal. *Id.* at 557.

Taken together, the Order denying the TRO Application and the Reclamation Procedures Order accomplished the same thing that was accomplished in *Color Tile*: Simon was denied physical possession of the Goods, and a procedure to validate and treat its reclamation claim was put in place. In fact, the Reclamation Procedures Order provides that the Debtors may continue to dispose of goods otherwise subject to Reclamation Claims. Since by its TRO Application Simon sought to enjoin just such disposal, the TRO Application is effectively mooted by the superseding Reclamation Procedures Order.

For these reasons, Simon failed to demonstrate that an immediate appeal will materially advance the termination of litigation.

## V.
## CONCLUSION

Based upon the foregoing reasons and authorities, Foothill submits that the Motion should be denied.

Dated: February 12, 2007
       Wilmington, Delaware

Respectfully submitted,

REED SMITH LLP

By:   /s/ Kurt F. Gwynne
      Kurt F. Gwynne (No. 3951)
      1201 Market Street, Suite 1500
      Wilmington, DE 19899
      Telephone: (302) 778-7500
      Facsimile: (302) 778-7575

      -and-

Paul S. Arrow, Esquire
BUCHALTER NEMER
1000 Wilshire Blvd., 15th Floor
Los Angeles, CA  90017
Telephone: (213) 891-0700
Facsimile (213) 896-0400
E-mail: parrow@buchalter.com

Counsel for Wells Fargo Foothill, Inc.