UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ADVANCED MARKETING SERVICES, INC.,<br>a Delaware corporation, *et al.,*<br><br>Debtors. | Chapter 11<br><br>Case No. 06-11480-CSS<br><br>Jointly Administered |
| SIMON & SCHUSTER, INC., a New York corporation,<br><br>Plaintiff,<br><br>- against -<br><br>ADVANCED MARKETING SERVICES, INC., a Delaware corporation,<br><br>Defendant. | <br><br><br><br>Adv. Pro. No. 07-50004-CSS<br><br><br><br>Related Adv. Dkt. Nos. 29, 35, and 36 |

### SIMON & SCHUSTER, INC.'S REPLY IN SUPPORT OF
### MOTION FOR LEAVE TO APPEAL

Simon & Schuster, Inc. ("S&S"), a creditor and supplier of goods to defendant Advanced Marketing Services, Inc. ("AMS"), respectfully submits this reply (the "Reply") to the oppositions (the "Oppositions") of Advanced Marketing Services, Inc. ("AMS") and Wells Fargo Foothill, Inc. ("Wells Fargo") to S&S' motion (the "Motion for Leave") for leave to appeal, pursuant to 28 U.S.C. §§ 158(a) and Bankruptcy Rules 8001, 8002 and 8003 from this Court's Order dated and entered on the docket on January 22, 2007.

### Introduction

AMS and Wells Fargo contend that the fundamental issue upon which S&S seeks immediate appeal was not in fact determined by the Court. However, the Court's January 22, 2007 opinion (the "Opinion") unequivocally held that "S&S failed to establish it any likelihood

(let alone a probability) of success" and that holding was based on the mere existence of Wells Fargo's pre-petition and post-petition liens. *See* Opinion at 16 and 9-12. S&S concedes that if the Court confirms that it has not concluded that the mere existence of Wells Fargo's pre and post-petition liens at the time of the reclamation demand rendered S&S' reclamation claim without value, there is no need for an interlocutory appeal at this time. However, unless the Opinion is clarified, AMS will have a rationale to deny every reclamation claim asserted in these cases, whether by S&S or other vendors.

In fact, it can only be the mere existence of liens that was used to justify the denial of S&S' reclamation because there was no evidence that Wells Fargo was being paid out of the proceeds of the goods S&S sought to reclaim. It is logically impossible for that to have happened. AMS sold goods on 30 and 45 day terms. Even if AMS sold and invoiced S&S' goods on the first day of its bankruptcy, the day on which S&S made its reclamation demand; the invoices for those goods would not have been due until January 26, 2007 or February 10, 2007 at the earliest. There is no evidence that AMS' customers were paying at or faster than terms. It is not reasonable, then, to assume that the proceeds of S&S reclamation goods were being used to pay down Wells Fargo's debt. Thus, when the Court held that there was no probability S&S could establish a reclamation claim; it could only do so on the mere existence of a lien.

While AMS and Wells Fargo make much ado about the preliminary nature of the Opinion and Order and that the Court's conclusions of law are not binding on the Court, we can be certain that they will treat the Opinion as gospel when it comes time to issue the reclamation claims report. Indeed, Wells Fargo has already enthusiastically adopted the "mere existence" theory as a justification for denying reclamation claims in these cases. *See* Wells Fargo Opp. at 13-14.

It would be disingenuous for AMS to suggest that the reclamation claims report will do anything other than take the position that all reclaiming creditor claims are invalid because they fail to satisfy the requirements of section 546(c) of the Bankruptcy Code. Specifically, the reclamation report will likely state that at the time the goods were delivered and at the time the reclamation demand was made, the goods were subject to the prior rights of Wells Fargo's pre-petition and/or post-petition liens. Therefore, as AMS (and perhaps Wells Fargo) are certain to argue, the reclamation claims are invalid. For this reason, this Court's Opinion effectively decides the merits of not just S&S' reclamation claim, but of every other reclaiming creditors claim as well.[1]

Just based on a review of the docket, over 35 reclaiming creditors asserting reclamation demands of over $45 million in the aggregate will be completely defeated by liens securing a claim of only $41 million as of the Petition Date that was paid down to $26 million as of the TRO hearing, that has dwindled almost to nothing as of the date of this Reply and, if the sale of AMS goes through as announced, will be completely paid off by March 16, 2007. When the Court's Opinion is viewed in this, the proper context, it is clear that leave to appeal should be granted in this case, or at a minimum, the Opinion should be clarified to limit its legal conclusions.

### Response

**A.    The Issues on Appeal Involve "Controlling" Issues of Law**

In the Third Circuit, a controlling issue of law is one that if erroneously decided, would result in reversible error on final appeal. *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir.

---

[1]    As a result, AMS' argument that the Order is an unappealable interlocutory order fails. *See Robinson v. Lehman*, 771 F.2d 772, 782 (3d Cir. 1985) (denial of a temporary restraining order is appealable if its "denial decides the merits of the case or is equivalent to the dismissal of the claim").

1974). "Controlling means 'serious to the conduct of the litigation, either practically or legally.'" *Schnelling v. KPMG LLP*, 2006 WL 1540815 at *2 (D. N.J. 2006) (quoting *Russ-Tobias v. Penn. Bd. of Prob. and Parole*, 2006 WL 516771 at *33 (E.D. Pa. 2006).

Here, the gravamen of S&S' appeal is that the Court's Opinion establishes that the mere existence of a pre-petition or post-petition lien is sufficient to defeat a claim for reclamation under section 546(c) of the Bankruptcy Code. That conclusion of law forecloses not only S&S' reclamation rights, but also the rights of all other reclaiming creditors in these cases. It is not plausible to deny that such a holding is legally and practically serious. Thus, S&S' appeal presents controlling issues of law.

### B. There is Substantial Ground For Difference of Opinion

S&S reads this Court's Opinion as tantamount to a holding that the mere existence of a superior lien defeats the right of reclamation. Even Wells Fargo differs with that conclusion when it states that the "mere presence of a superior lien does not extinguish a reclamation claimant's rights[.]" Wells Fargo Opp. at 13. Wells Fargo must concede that point because there is ample authority directly stating that proposition. *See In re Pester Refining Co.*, 964 F.2d 842 (8th Cir. 1992); *see also In the Matter of Reliable Drug Stores, Inc.*, 70 F.3d 948, 950 (7th Cir. 1995); *In re Hartz Foods, Inc.*, 264 B.R. 33, 37 (Bankr. D. Minn. 2001); *In re Arlco, Inc.*, 239 B.R. 261 (Bankr. S.D.N.Y. 1999); *In re Victory Markets, Inc.*, 212 B.R. 738, 742 (Bankr. N.D.N.Y. 1997).

Instead, in Wells Fargo's view, while the right remains, there are no remedies. Wells Fargo believes that the mere existence of a lien precludes actual reclamation or the grant of an administrative claim. Wells Fargo Opp. at 13-14. Wells Fargo, however, misstates what actually occurred in the cases upon which it relies. In *Pittsburgh Canfield, Dairy Mart* and

*Arlco*, an administrative claim was denied because the Court found that the secured lender had actually been paid out of the proceeds of the goods subject to reclamation. *See Yenkin-Majestic Paint Corp. v. Wheeling-Pittsburgh Steel Corp. (In re Pittsburgh-Canfield Corp.)*, 305 B.R. 688, 692 (Bankr. N.D. Ohio 2003) ("the Court finds that all of the goods that are the subject of the Reclamation Demands made by the Objecting Vendors have been sold or otherwise disposed of, that the proceeds of those goods have been applied to pay down revolving advances under the DIP Facility"); *In re Dairy Mart Convenience Stores, Inc.*, 302 B.R. 128, 135 (Bankr. S.D.N.Y. 2003) ("Whatever reclamation goods may have been present on the date of the demand or the proceeds of the sale of those items – all of which was subject to Citizen's rights – were used to satisfy Citizen's secured claim."); *Arlco*, 239 B.R. at 273 ("As a result, all of the goods which Galey sought to reclaim were sold and the proceeds used to pay CIT.").

The above-referenced cases provide ample authority for the proposition that the mere existence of a superior lien is not sufficient to defeat a claim for reclamation. Instead, the authorities repeatedly hold that reclamation claims remains valid until the point at which the secured creditor's claim is satisfied out of the goods subject to reclamation. Clearly, there are substantial grounds for difference of opinion on this controlling issue.[2]

### C.  This Appeal Will Advance the Litigation

As it stands at present, this Court's opinion forecloses S&S and all other creditors' reclamation rights. In all practical aspects, S&S is out of court with respect to its reclamation

---

[2] AMS' claim that S&S failed to raise the issue that a secured creditor can only defeat a reclamation claim if it is paid out of the proceeds of the reclaimed goods is without merit. As S&S stated in its Reply Brief in Support of Emergency Application of Simon & Schuster for Temporary Restraining Order pursuant to Bankruptcy Rule 7065, "the relevant inquiry in determining the value of a reclamation claim is not the amount of the secured creditor's claim, but whether the secured creditor's claim is satisfied out of the goods to be reclaimed." That sentence clearly raised the issue.

claim. If S&S is granted leave and prevails on appeal, S&S will have the opportunity to have its reclamation claim decided on the merits.

Moreover, a timely determination of reclamation claims is critical to advancing AMS' chapter 11 cases. In connection with AMS' request for approval of auction procedures and bid protections for Baker & Taylor, which were approved on February 16, 2007, the Official Committee of Unsecured Creditors (the "Committee") negotiated the following language in the order:

> Inventory. Unless the inventory of Seller is sold pursuant to a Qualified Offer as set forth in subparagraph (f) above approved by the Bankruptcy Court, Seller shall propose and file with the Bankruptcy Court a program to provide for the return of the inventory of Seller to the publishers that sold such inventory to Seller for values and on terms as agreed by Seller and the Official Committee of Unsecured Creditors or as otherwise ordered by the Bankruptcy Court, such program to be effective after payment of the Closing Payoff Amount.

*See* Order Pursuant to Sections 105(a), 363 And 364 of the Bankruptcy Code Approving Qualified Transaction Procedures, ¶ 3(g) (Chapter 11 Docket No. 374). To determine the "value" of the returned books, such programs typically use a multiplier based on the impact the return of the books will have on the estate and its effect on distributions to other unsecured creditors. The multiplier is then used to adjust the invoice price of the goods returned to the publisher. Therefore, an understanding of the scope of reclamation rights is critical to the development of a rational returns program in this case.

## Conclusion

For the foregoing reasons, in addition to those set forth in the Motion for Leave, S&S respectfully requests that this Court (a) grant it leave to appeal the Order, or (b) alternatively, clarify and limit the Opinion.

/s/ Mark Minuti

Mark Minuti (No. 2659)
Jeremy W. Ryan (No. 4057)
**SAUL EWING LLP**
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
Tel.: (302) 421-6840
Fax: (302) 421-5873

-and-

**KELLEY DRYE & WARREN LLP**
Craig A. Wolfe
Robert L. LeHane
101 Park Avenue
New York, NY 10178
Tel: (212) 808-7800
Fax: (212) 808-7897

Co-Counsel to Plaintiff
Simon & Schuster, Inc.

Dated: February 20, 2007